*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0110p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

CHARLES and CATHERINE BRAUN, husband and
wife, EDWARD and MURIEL PARDON, husband and
wife,

*Plaintiffs-Appellants,*

No. 07-1370

*v.*

ANN ARBOR CHARTER TOWNSHIP,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-71330—Lawrence P. Zatkoff, District Judge.

Argued: February 1, 2008

Decided and Filed: March 13, 2008

Before: MERRITT, GILMAN, and COOK, Circuit Judges.

_____

## COUNSEL

**ARGUED:** J. David Breemer, PACIFIC LEGAL FOUNDATION, Sacramento, California, for
Appellants. Thomas R. Meagher, FOSTER, SWIFT, COLLINS & SMITH, Lansing, Michigan, for
Appellee. **ON BRIEF:** J. David Breemer, PACIFIC LEGAL FOUNDATION, Sacramento,
California, Joseph W. Phillips, CONLIN, McKENNEY & PHILBRICK, Ann Arbor, Michigan, for
Appellants. Thomas R. Meagher, FOSTER, SWIFT, COLLINS & SMITH, Lansing, Michigan, for
Appellee.

_____

## OPINION

_____

## I.

MERRITT, Circuit Judge. In this Takings Clause and Due Process case, landowners who
sought to rezone their farmland for a trailer park and other residential development challenge the
district court's order granting the defendant Township's motion for summary judgment. The district
court held that the plaintiffs' Takings Clause claim was not ripe for review in the federal courts due
to the rule of *Williamson County v. Hamilton Bank*, 473 U.S. 172 (1985), which requires that a

plaintiff first give the state court an opportunity to adjudicate the issue of just compensation before seeking a declaration from a federal court that the state has failed to provide just compensation. According to *Williamson County*, a plaintiff bringing a takings claim must first pursue – and be denied – available remedies in state court. The district court in the present case concluded that the plaintiffs' failure to do so precludes a federal court from exercising subject matter jurisdiction over the takings claim. The district court also held that the plaintiffs' contention that the defendant's zoning ordinance and appeals process violated various constitutional rights – including procedural due process, substantive due process and equal protection – was "ancillary" to the takings claim and thus similarly unripe for review.

The plaintiffs argue in their appeal that these injuries are unrelated to the Takings Clause claim and must be reviewed as completed injuries. Conflicting case law exists as to whether such claims are, in fact, independent. However, even assuming that the claims are not ancillary to the Takings Clause issue, summary judgment is nevertheless appropriate for the defendant. Consequently, we affirm the grant of summary judgment for the defendants.

## II.

Plaintiffs Charles and Catherine Braun own 280.5 acres of property zoned A-1 (Agricultural District) and an additional 5.5 acres zoned R-2 (Single Family Suburban Residential District).[1] Plaintiffs Edward and Muriel Pardon own 77 acres of neighboring property that is zoned as A-1. The two properties (collectively, the "Property") are located along the northern boundary of Ann Arbor city limits in Michigan (the home of the University of Michigan), in a township with a population of 5,000.[2]

Both the Brauns and the Pardons had used their land for commercial farming for many years. Due to the declining profitability of farming, a fact supported by expert testimony, the two families contracted to sell the Property to Plaintiff Colt Farms, Inc. ("Colt Farms"), a real-estate developer. On February 27, 2001, the plaintiffs asked the defendant Township to rezone approximately 215 acres of the Property to R-6 (Mobile Home Park Residential District) and the remaining 149 acres to R-3 (Single Family Home Urban Residential District). In support of their application, the plaintiffs included an appraiser's opinion that only high-density residential housing would be economically viable for the Property. On April 2, 2001, the defendant notified the plaintiffs that their Petition for Rezoning would be considered at a public hearing, which commenced before the Planning Commission on May 24, 2001. A second full hearing to consider the application occurred on July 9, 2001. Afterwards, the Planning Commission sent the plaintiffs a request with a list of site-specific information that the commission stated was relevant to its determination, but which was not required by the zoning ordinance. The plaintiffs did not accede to this request, indicating by letter that the request was unauthorized and that they had provided all of the information required by the relevant Zoning Ordinance.[3] The Planning Commission then held a third public hearing on August 6, 2001, at which time it voted to deny the plaintiffs' petition and submitted its

---

[1] A-1 zoning limits property uses to (1) specified agricultural activities, (2) public or quasi-public activities, and (3) single family detached lots having a minimum size of 10 acres. R-2 zoning allows up to one home per acre.

[2] The plaintiffs' proposal for re-zoning could ultimately increase the Township's population by over 3,000, to 8,000. *See* Joint Appendix ("JA") 68-69.

[3] Among other issues, the requested information included: the potential impact on water quality, the impact on the Township's traffic, and details about the development's water and sewage plans. *See* JA 92-94. The plaintiffs refused to provide such information, citing the zoning ordinance. At this point, the plaintiffs also indicated that they thought they were being treated differently than other applicants for rezoning. JA 95-97. In its defense, the Township argues that the magnitude of the request mandated a more searching inquiry.

recommendation to the Township Board. On September 14, 2001, the Washtenaw County Metropolitan Planning Commission also voted to recommend denial of the plaintiffs' petition for rezoning. Finally, on October 15, 2001, the defendant's Township Board adopted a resolution denying the application for rezoning based on its conclusion that the proposed rezoning would have a significant – and detrimental – impact on the community. *See* Joint Appendix ("JA") 99-105 (describing, *inter alia*, the proposed rezoning's impact on traffic, education, and law enforcement).

After receiving this denial, the plaintiffs asked the defendant about the possibility of receiving a variance from the Zoning Board of Appeals. The Township responded by letter, on October 29, 2001, stating that such an appeal was unavailable because the zoning board does not have the jurisdiction to "change a [zoning classification] for any property, grant a use variance, or hear any other appeal from the Township Board." Br. of Plaintiffs at 10. This advice stemmed from the defendant's interpretation of Section 24.04 of the applicable zoning ordinance, which reads: "The Board of Appeals shall not alter or change the zoning district classification of any property, or make any change to the terms of this ordinance, and shall not take any action that would result in making a legislative change." JA 108-09. The plaintiffs chose not to appeal to the Zoning Board of Appeals.

On February 1, 2002, the plaintiffs brought suit in state court challenging the constitutionality of the A-1 and R-2 district zoning restrictions for violating the Takings Clause, as such restrictions applied to the Property. Declining to reach the merits of the property owners' constitutional claims, the state trial court granted the defendant's motion for summary judgment after finding that the claim was not yet ripe for review. The Michigan Court of Appeals affirmed on the same grounds, noting that the plaintiffs had not sought and been denied a use variance from the Zoning Board of Appeals. *See Braun v. Ann Arbor Twp.*, 683 N.W.2d 755 (Mich. Ct. App. 2004). The Michigan court stated that the finality requirement would be met – and the claims ripe for review in state court – if the plaintiffs were denied "the minimum variance that is necessary to place the land in productive economic use within the zoning classification . . . ." *Id*. at 160. The plaintiffs then unsuccessfully sought leave to appeal to the Michigan Supreme Court. *Braun v. Ann Arbor Twp.*, 698 N.W.2d 400 (Mich. 2005).

On July 21, 2004, the plaintiffs sought a use variance from the Zoning Board of Appeals. The board denied this request after determining that it lacked the appropriate jurisdiction. Instead of returning to state court for a ruling on the merits, the plaintiffs filed suit in federal court asserting the following claims: (1) deprivation of procedural due process; (2) deprivation of substantive due process; (3) violation of their equal protection rights; (4) violation of the Takings Clause; and (5) a violation of 42 U.S.C. § 1983. The defendant then filed a motion for summary judgment in opposition to the plaintiffs' claims.

The district court granted the defendant's motion, structuring its holding around two issues. First, as to the Takings Clause Claim, it held that the plaintiffs had not fully satisfied the Supreme Court's *Williamson County* rule because they had not sought or been denied "just compensation" in state court. *Braun v. Ann Arbor Township*, No. 05-71330, 2007 U.S. Dist. LEXIS 7908, at *14 (E.D. Mich. Feb. 5, 2007) ("The Michigan Court of Appeals did not address the *takings clause* or the right to compensation.") (emphasis in original). The court rejected the plaintiffs' attempt to characterize their case as falling under *DLX v. Kentucky*, 381 F.3d 511 (6th Cir. 2004), where we held that a takings claim was ripe for review despite the fact that the state courts had not reached the merits because the state's procedural rules foreclosed any possibility of a remedy. *Braun*, 2007 U.S. Dist. LEXIS 7908 at *17-18 (citing *DLX*, 381 F. 3d at 519). Second, the district court held that the plaintiffs' related constitutional claims were similarly unripe for review because they were all "ancillary" to the takings clause claim. *Id.* at *21. Consequently, it granted the defendant's motion for summary judgment with respect to all of the plaintiffs' claims.

In this appeal, the plaintiffs make two basic arguments. First, they urge us to reconsider the viability of the *Williamson County* rule – which, of course, we may not do so long as it has not been overruled by the Supreme Court – or, as in *DLX*, to find that the rule does not apply to their case. And second, they contend that the district court's conclusion that the related constitutional claims were ancillary was incorrect as a matter of law. According to the plaintiffs, each constitutional injury is a concrete and completed injury, independent of the takings claim.

### III.

This Court reviews *de novo* a district court's grant of summary judgment for a party. *Nat'l Solid Wastes Mgm't Ass'n v. Daviess County*, 434 F.3d 898, 902 (6th Cir. 2006). In *Williamson County Regional Planning Commission v. Hamilton Bank*, the Supreme Court held that the Takings Clause does not prohibit the government from taking private property, but only prohibits the government from taking private property "*without just compensation.*" 473 U.S. at 194 (citing *Hodel v. Va. Surface Mining & Reclamation Ass'n., Inc.*, 452 U.S. 264, 297 n.40 (1981)) (emphasis added). A takings claim is therefore not ripe for review unless a property owner is denied just compensation. 473 U.S. at 194 ("Because the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied."); *Waste Mgmt. v. Metropolitan Gov't*, 130 F.3d 731, 739 (6th Cir. 1997). Accordingly, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Coles v. Granville*, 448 F.3d 853, 861 (6th Cir. 2006) (quoting *Williamson*, 473 U.S. at 195). Thus, in order for a plaintiff to bring a takings claim in federal court, he or she must first pursue available remedies in state court. Two issues inform this analysis: first, whether the initial decision-maker, *i.e.* administrative agency, has arrived at a "definitive position on the issue that inflicts an actual, concrete injury" (the finality requirement); and second, whether the state has denied just compensation based on that injury (the remedies requirement). *Williamson*, 473 U.S. at 193, 195. Although the defendant argues that the plaintiffs have not satisfied the finality prong, we pretermit this question and instead focus on the second prong, which is dispositive on the issue of federal subject-matter jurisdiction.[4]

The parties agree that Michigan provides an adequate "just compensation" procedure. *See, e.g.*, *Macene v. MJW, Inc.*, 951 F.2d 700, 704 (6th Cir. 1991) ("In Michigan, the doctrine of inverse condemnation is long recognized and constitutionally established.") (citing MICH. CONST., art. 10, § 2). And while the plaintiffs began to use that procedure, they never sought a remedy on the merits in state court and were thus not denied just compensation in state court, as required by *Williamson County*. The plaintiffs make two arguments for why this rule should not control their situation.

First, they suggest that *Williamson County* – and its requirement that takings claims must first be pursued in state court – is not good law. They note, for example, that Justice Rehnquist, among other jurists, has expressed skepticism that "federal takings claims . . . should be singled out to be confined to state court." *San Remo Hotel, L.P. v. City and County of San Francisco*, 545 U.S. 323, 351 (2005) (Rehnquist, C.J., concurring). Additionally, they argue that the *Williamson County* rule creates a "res judicata" trap because federal courts must give preclusive effect to a prior state

---

[4] In its decision, the district court concluded that the plaintiffs had received the requisite final administrative decision after being denied a variance by the Zoning Board of Appeals. *See Braun* 2007 U.S. Dist. LEXIS 7908 at *11 (quoting *Seguin v. Oliveto*, 968 F.2d 584, 587 (6th Cir. 1992) ("[A] zoning determination cannot be deemed final until the plaintiffs have applied for, and been denied, a variance.")). The defendant argues that such a conclusion is not compelled because the plaintiffs essentially asked the Zoning Board of Appeals to deny their application instead of asking for a minimal variance or proposing an alternative, less invasive plan upon which a variance might have been granted. As noted, this issue does not require resolution because the plaintiffs fail under the second prong of *Williamson County*.

court action addressing the takings claim. *See* Br. of Plaintiffs at 25-26 ("The barring of the federal courthouse door to takings litigants seems an unanticipated effect of *Williamson County*, one which is unique to the takings context . . .") (quoting *DLX*, 381 F.3d at 521). In this case, however, the res judicata trap is not at issue – only if the plaintiffs had unsuccessfully pursued a remedy in state court, which was possible after being denied the variance, and then been denied review in federal court would this argument have merit.[5] Similarly, the plaintiffs' argument that a state court ruling might have precluded federal review under the *Rooker-Feldman* doctrine is a hypothetical argument that is not presented by this case. *See Coles*, 448 F.3d at 857 ("Because we find that plaintiffs' case as presented to both the district court and this Court does not implicate *Rooker-Feldman*, we hold that *Rooker-Feldman* is inapplicable to Plaintiffs' allegations on appeal."). The Supreme Court has yet to adopt the plaintiffs' position or to overrule *Williamson County* on other grounds; consequently, we reject the plaintiffs' argument that they are not bound by the requirement to pursue a remedy in state court.

Second, the plaintiffs contend that they have, in fact, satisfied their obligation to pursue just compensation in state court. Specifically, they claim that they sought, and were denied, state compensation, even though the state court never explicitly reached the merits of their claim. In support of this position, they cite *DLX v. Kentucky*, in which we concluded that a plaintiff had satisfied *Williamson County*'s second prong. 381 F.3d at 518-19. In *DLX*, a plaintiff sought compensation from a Kentucky court for an alleged regulatory taking resulting from the state's refusal to grant mining rights over a property. The state trial court dismissed the claim for lack of ripeness (the company never sought administrative review of the initial decision) and the appellate court reversed. The Supreme Court of Kentucky then granted the state's petition for review, and reversed the appellate court, deciding the case on *exhaustion* grounds rather than ripeness. *See Commonwealth v. DLX, Inc.*, 42 S.W.3d 624, 625 (Ky. 2001). The plaintiff corporation then filed its takings claim in federal district court, which dismissed the claim for want of subject-matter jurisdiction and specifically ripeness. We reversed, however, stating that DLX had "sought compensation and none was awarded . . . [t]hat the decision was not 'on the merits' in the strictest sense does not mitigate DLX's injury." 381 F.3d at 519.

But the plaintiffs' argument that *DLX* controls the instant case fails to acknowledge or to explain a key procedural aspect of the earlier case. As the district court in the instant case explained, the *DLX* Court itself emphasized that "DLX has *no more remedy to seek in state court*; the time for application of review of the [administrative] decision is long past, and any state-court action it files will be dismissed for want of exhaustion." *Id.* (emphasis added); *Braun*, 2007 U.S. Dist. LEXIS 7908 at *18. Although the Kentucky courts had not reached the merits of the claim, the state's procedural rules operated to deny just compensation, which, according to our colleagues in *DLX*, made the claim eligible for review under *Williamson County*. But in the instant case, in which the state court's decision was grounded in ripeness analysis, the same problem does not exist: after being denied the variance by the Zoning Board of Appeals, the plaintiffs' claim was ripe for review in state court and no procedural bar existed to prevent review. Moreover, application of the *Williamson County* rule would have deprived DLX from any review whatsoever, a problem that does not exist in the instant case. While we are sympathetic to the plaintiffs' frustration regarding their inability to seek review of the merits of their takings claim, it appears that they mistakenly interpreted *DLX* to allow them to bypass the *Williamson County* rule when, in fact, the *DLX* decision is not on point. Because the plaintiffs did not fulfill their obligation of seeking just compensation in state court, we do not have jurisdiction to reach the merits of their takings claim.

---

[5] As discussed *infra*, the plaintiff in *DLX* had no recourse whatsoever to federal review because of the operation of Kentucky's procedural reviews. Conversely, the Brauns and Pardons could have filed their claim in state court once it had ripened. Thus, the *DLX* Court's warning about the res judicata trap does not ring as strongly in this case.

**IV.**

The district court dismissed the plaintiffs' four related constitutional claims – procedural and substantive due process, equal protection, and § 1983 – on the grounds that they were "ancillary" to the unripe takings claim. *See Braun* 2007 U.S. Dist. LEXIS 7908 at *21-22 (citing *Fair v. Peters*, 427 F.3d 1035, 1037 (6th Cir. 2005)). According to the district court, resolution of the takings claim was necessary in order to address the attendant process-related issues. In response to countervailing authority cited by the plaintiffs, the district court noted that those cases were not on point because "none of them involved a plaintiff alleging a federal takings claim." *Id.* at *21. Even assuming that the claims were independent injuries, we affirm the grant of summary judgment for the defendants.

*(i) Procedural due process claim*

The plaintiffs' procedural due process claim – in which they argue that the Township's treatment of their zoning request demonstrated an insufficiently fair decision-making process – is defective for two alternative reasons. *First*, the claim is ancillary to and includes the same facts as the takings claim and should be governed by the takings claim theory requiring exhaustion of state remedies. *Second*, the claim is without any factual basis showing the deprivation of a property right under state law or the Constitution because the concept of property under state law does not include the right to have the local government rezone agricultural land to allow a trailer park.

When an individual is deprived of a protected property or liberty interest, "procedural due process generally requires that the state provide a person with notice and an opportunity to be heard" before such a deprivation occurs. *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005). Where a procedural due process claim occurs alongside a takings claim, we have focused on the circumstances of the specific case – and particularly the issue of when the alleged injuries occurred – before deciding whether to apply *Williamson County* to both claims. *See Bigelow v. Michigan Dep't of Natural Resources*, 970 F.2d 154, 159 (6th Cir. 1992) ("The plaintiffs' procedural due process claim is ancillary to this main issue; they simply assert that they were not given an effective opportunity to defend their fishing rights before they were taken. There was thus no 'instantaneous infliction of a concrete injury.'") (internal citation omitted); *see also Harris v. Riverside Co.*, 904 F.2d 497, 500 (9th Cir. 1990) (holding that "procedural due process claims arising from an alleged taking may be subject to the same ripeness requirements as the taking claim itself depending on the circumstances of the case"). The plaintiffs rely on *Nasierwoski v. Sterling Heights*, 849 F.2d 890 (6th Cir. 1991), for the proposition that their procedural due process claim is distinct from the takings claim. In *Nasierwoski*, a plaintiff landowner challenged the local government's action of rezoning his property without first giving him either notice of the change or a hearing. We held that such a procedural due process claim is "instantly cognizable in federal court without requiring a final decision on a proposed development from the responsible municipal agency." 949 F.2d at 894. But as the district court in the instant case noted, the plaintiff in *Nasierwoski* alleged that the government had failed to provide a public hearing before rezoning his property, not that there was an unconstitutional "taking" of his property. *Id*. at 893. The injury in *Nasierwoski* was complete the instant he did not receive notice or a hearing. Thus, the plaintiff in *Nasierwoski* was seeking the very opportunity to have a hearing, which undoubtedly occurred in the instant case, and not a declaration that the state action constituted a taking. Here, the thrust of the plaintiffs' due process claim is that the Township's refusal to rezone their property was a taking, one resulting from a policy bias (evidenced by the request for more information) against low-income housing proposals. Importantly, if the plaintiffs were to succeed in their state-court takings claim, no procedural due process injury would likely exist. We previously explained why, in such a situation, the procedural due process claim is subject to *Williamson County's* exhaustion requirement:

> Until the state courts have ruled on the plaintiffs' inverse condemnation claim, this
> court cannot determine whether a taking has occurred, and thus cannot address the

procedural due process claim with a full understanding of the relevant facts. Furthermore, addressing the plaintiffs' procedural due process claim at this stage of the proceedings would allow future plaintiffs effectively to circumvent the ripeness requirement for takings claims simply by attaching a procedural due process claim to their complaint.

*Bigelow*, 970 F.2d at 160. Likewise, unless there is a taking in the instant case, we are unable to say that the Township's decision resulted from bias potentially constituting a procedural due process violation. Further, a ruling that the plaintiffs' procedural due process claim is ripe would implicate our concern that a party could easily bypass the *Williamson County* rule by attaching an unclear and underdeveloped procedural due process claim to a takings claim. We therefore believe that the district court's conclusion that the procedural due process claim is ancillary to the takings claim is correct.

Even assuming *arguendo* that the claim is not ancillary to the takings claim and that it is ripe for review, we are unable to find any cognizable property right that triggers due process protections. Property rights are created and defined by independent sources such as state law and not by the Constitution. *See Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002). In order to have a property interest in a benefit, a person must have more than a desire for it or unilateral expectation of it; rather, he must have a "legitimate claim of entitlement to it" – in this case, a legitimate claim or an entitlement to a rezoning or variance allowing a trailer park and other residential development. *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 435 (6th Cir. 2005) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). A property owner arguably has a property right where the government *rezones* an existing property. *See Nasierwoski*, 949 F.2d at 896 (changing the existing zoning classification deprived the plaintiff of a property right); *see also Buckeye Cmty. Hope Found. v. City of Cuyahoga Falls*, 263 F.3d 627, 642 (6th Cir. 2001) (finding a property interest where the zoning permit complied with existing zoning regulations and the site plan had already been approved). But in order to establish a property right in a future, rezoned land use, an individual "must point to some policy, law, or mutually explicit understanding that both confers the benefit[] and limits the discretion of the City to rescind the benefit." *R.S.S.W.*, 397 F.3d at 435 (quoting *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002)). Here, the plaintiffs are unable to point to any policy, law, or understanding with the defendant that created the rezoning benefit they are seeking to enforce. And in the instant case, the board certainly possessed the discretion to deny the plaintiffs' request; consequently, no cognizable property right exists, which, in turn, means that procedural due process protections are not triggered.

### (ii) Substantive due process claim

The plaintiffs argue that the denial of the zoning change violated substantive due process for two reasons. First, they contend that the denial perpetuated a "policy of barring low-income housing"; and second, they claim that the denial was arbitrary and based on mere speculation. Br. of Plaintiffs at 43-44. Citizens have a substantive due process right "not to be subjected to arbitrary or irrational zoning decisions." *Pearson v. Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992) (citing *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263 (1977)). "To state a substantive due process claim in the context of zoning regulations, a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action." *Tri-Corp Mgmt. Co. v. Praznik*, 33 F. Appx. 742, 747 (6th Cir. 2002) (citing *Silver v. Franklin Township Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992)). We have previously characterized the relationship between substantive due process and takings claims as follows: "Supreme Court authority subsequent to *Williamson County* strongly stresses that substantive due process concepts are not available to provide relief when another provision of the Constitution directly addresses the type of illegal government conduct alleged by the plaintiff." *Warren*, 411 F.3d at 706-07 (citing *Graham v.*

*Connor*, 490 U.S. 386, 394-95 (1989)).  A court should "not interfere with local zoning decisions unless the locality's action 'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety or the public welfare.'" *Warren*, 411 F.3d at 708 (quoting *Nectow v. City of Cambridge*, 277 U.S. 183, 187-88 (1928)).  But where a substantive due process violation exists, no amount of just compensation can authorize the action.  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 543 (2005).

Here, the district court held that the substantive due process claims were "ancillary" to the takings claim.  At least insofar as the remedy sought by the plaintiff (money damages) is the same under both the takings clause and the substantive due process clause, our warning in *City of Athens* is apposite and the due process claim is subsumed by the takings claim.  But the plaintiffs do seek equitable relief (an injunction) that would normally be available only under a substantive due process theory.  We thus assume *arguendo* that the substantive due process claim is not ancillary to the takings claim.

As discussed *supra*, the plaintiffs do not appear to have a protected property interest in a future, rezoned use of property for a trailer park.  However, even assuming *arguendo* that the plaintiffs do have a protected property interest, no genuine issue of material fact exists as to whether the locality's decision was arbitrary and capricious.  The plaintiffs clearly fail to meet this standard.  In its letter denying the initial application for rezoning, the defendant provided numerous justifications for its determination, including increased costs (due to the need to build additional schools, for example) and public safety concerns such as higher traffic flow.  *See* JA 100-05.  These stated reasons, which we have no reason to doubt, clearly defeat any argument that the decision had "no rational relationship to any public purpose."  *See Warren*, 411 F.3d at 705.  Even when viewed in a light most favorable to the plaintiffs, therefore, the facts compel a grant of summary judgment in the defendant's favor.  Consequently, we affirm the decision to grant summary judgment for the defendant on the substantive due process claim.

### (iii) Equal protection claim

The plaintiffs do not raise a substantial constitutional issue regarding equal protection.  The plaintiffs contend that the defendant treated them differently from other individuals who sought zoning changes by requesting additional information regarding the proposed development to supplement the application for rezoning.  To state an equal protection claim, a party must claim that the government treated similarly situated persons differently. *See Silver v. Franklin Township, Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992).  Again, conflicting case law exists regarding the district court's determination that the equal protection claim was foreclosed as ancillary to the takings claim. *Compare Bigelow*, 970 F.2d at 159-60 (equal protection claim unripe), *with Silver*, 966 F.2d at 1036-37 (adjudicating equal protection claim despite unripe takings claim).

Even assuming that the plaintiffs' claim is not ancillary to their takings claim, the failure to make any concrete allegations with respect to similarly situated persons mandates a grant of summary judgment in the defendant's favor.  The Supreme Court has recognized successful equal protection claims brought by a "class of one" where the plaintiff alleges that he or she has been treated differently from similarly situated individuals.  *See Willowbrook v. Olech*, 528 U.S. 562 (2000) (finding a valid equal protection claim where the locality required an owner to convey a 30-foot easement, instead of the stated 15 feet, as a condition for connecting the property to the municipal water supply).  However, the basis for any equal protection claim is that a locality has treated similarly situated individuals differently.  *Silver*, 966 F.2d at 1036.  Although the plaintiffs claim that they have been treated differently from other individuals seeking rezoning, they fail to allege any specific examples of *similarly situated* individuals, let alone evidence of situations where the proposed rezoning was similar in scale or impact.  As a result, we need not apply the rational

basis test because the plaintiffs have failed to demonstrate the existence of any similarly situated landowners. *Cf. Silver,* 966 F.2d at 1036-37 ("In this case . . . we need not even go so far as to apply the rational basis test because [the plaintiff] has failed to demonstrate that the Board treated him differently from similarly-situated individuals. Although Silver asserts that the Board has issued conditional zoning certificates to other condominium developments, he has presented no evidence that these other developments were similarly situated to his development."); *see also Tri-Corp*, 33 F. Appx. at 746-47 (rejecting the plaintiff's equal protection for failing to make any allegations with respect to similarly situated individuals).

### *(iv) § 1983 claim*

Finally, the plaintiffs contend that the defendant's denial of its application for rezoning, together with the zoning ordinance, violates 42 U.S.C. § 1983 (creating liability for deprivation of rights secured by the "Constitution and laws" of the United States) by effectively excluding persons of low and moderate income from living in town. We have dealt in this opinion with each of the plaintiffs' claims of "deprivation of any rights, privileges, or immunities secured by the Constitution," and the plaintiffs do not make any claim of right under a federal statute creating independent rights. Therefore, the summary judgment entered by the district court on this point is affirmed.

### V.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment for the defendant.