NOT RECOMMENDED FOR PUBLICATION
File Name:  17a0062n.06

No. 16-1574

**FILED**
Jan 25, 2017
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DONALD KATZ; KAREN MARKEL,                )
                                          )
   Plaintiffs-Appellants,                 )
                                          )        ON APPEAL FROM THE
v.                                        )        UNITED STATES DISTRICT
                                          )        COURT FOR THE EASTERN
VILLAGE OF BEVERLY HILLS,                 )        DISTRICT OF MICHIGAN
                                          )
   Defendant-Appellee.                    )        OPINION
                                          )
                                          )

**BEFORE:**    **GILMAN, GRIFFIN, and STRANCH, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.**  Plaintiffs Donald Katz and Karen Markel are husband and wife who resided in Beverly Hills, Michigan.  They are both Jewish.  The Plaintiffs filed suit against the Village of Beverly Hills, alleging unlawful search and seizure in violation of the Fourth Amendment and religious discrimination in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  The district court granted summary judgment to the Defendant on all claims, and the Plaintiffs now appeal. [1]  For the following reasons, we AFFIRM.

---

[1]The Plaintiffs voluntarily dismissed several Defendants, and the only remaining Defendant is the Village of Beverly Hills.

## I. BACKGROUND

The Plaintiffs' Third Amended Complaint describes conduct that they allege shows religious discrimination in violation of their constitutional rights. The events at issue center around problems that the Plaintiffs had with their neighbors and the Beverly Hills Village Public Safety Department.

First, the Plaintiffs allege that, in the winter of 2005, their neighbor Audrey Lambrecht complained that the area behind the Plaintiff's garage was untidy. In response, Village code enforcement officer Daniel Gosselin, who is responsible for enforcing village ordinances, visited Katz. Gosselin advised Katz that he was not in violation of the municipal code, but suggested that Katz clean up the area in the spring. In the early spring of 2005, Katz sent an email to the Village to inquire "what the Village allowed for outdoor storage." The Plaintiffs allege that, in response, a temporary code officer, David Brywa, issued Katz a citation for a code violation regarding the outside storage of pots and fencing.

At the pre-trial conference for the citation, Katz alleges that Brywa said he issued the citation to Katz because the back of the Plaintiffs' garage was a "mess" and Katz was a pig. Brywa also said that he believed Katz was "threatening to sue over the matter" and that he was a "Jew lawyer." Brywa informed Katz that Lambrecht complained about an accent light that had fallen behind the Plaintiffs' garage, but when Katz asked Brywa about one of Lambrecht's lights shining into his backyard, Brywa responded that "this is only about you and what you are." The citation was dismissed with prejudice. The Plaintiffs' Complaint does not indicate if Katz complained about Brywa to the Village or if anything occurred as a result of Brywa's discriminatory comments.[2]

---

[2]A question in Gosselin's deposition indicates that Brywa retired in 2009 or 2010.

In late 2005 or early 2006, Lambrecht built a privacy fence in spite of the fact that the Village had denied her application for a permit, and the Village did not take action against her when the Plaintiffs complained. The Plaintiffs also allege that Lambrecht cut down a tree on their property and stole the wood in April 2006, but the Village "took no steps to investigate or prosecute" Lambrecht's actions.

In 2007 and 2008, the Plaintiffs contacted the Village "numerous times to complain" that a different neighbor, Jeanne Baker, had bushes planted along the Plaintiffs' driveway that were too tall and impeded their vision entering and exiting the driveway. Although the Village agreed that the bushes were a violation and contacted Baker, it never cited her for any violations. The Plaintiffs allege that Baker allowed the bushes to die, but would "occasionally trim or sharpen the branches in order to cause injury to plaintiffs and/or their guests." The Plaintiffs complained to the Village, and Gosselin instructed Baker to remove the dead bushes. But Gosselin did not issue her a citation, and "[t]he dead bushes remain to this day."

In 2011, Baker installed flood lights on the side of her house that aimed directly at Plaintiffs' driveway. The Plaintiffs complained to the Village, and Gosselin agreed that the flood lights were a code violation. Although Gosselin visited Baker on several occasions regarding the flood lights, he did not issue her a citation and instead repositioned the lights himself.

Around April 5, 2012, Baker filed a complaint with the Village alleging that Katz had "stomped" on her bushes. Public safety officer Martin Bednarz issued a citation to Katz that charged him with malicious destruction of property. The Case Report for this incident stated that Baker was a victim of "[d]amage to [p]roperty," more specifically to the "hedges between homes." Bednarz's report stated that he "was dispatched to the listed address" on a malicious destruction of property report. When he arrived, he met with Baker, who "state[d] that her

neighbor to the east [kept] cutting her hedge and stomping on her bushes to destroy them" and that this was an "ongoing problem." Bednarz wrote that he was "personally aware of Sgt[.] Cook taking a run like this" earlier that year and that PSO Fisher "stated that he has been to this location on the same complaint." Further, he noted that "[w]hen an officer makes the location and tries to contact [Mr.] Katz, he will not come to the door and he hides in his home." Bednarz attempted to make contact by knocking on the door, ringing the doorbell, and having the dispatcher call the home. Katz did not answer, however, and Bednarz left the citation on the front door. In his deposition, Bednarz stated that he did not see Katz in the house or check whether he was at work at the time.

In the April 2012 Case Report, there is a notation from April 30, 2012 written by BVDURANTJ, which reads in its entirety: "To correct bias in report." In his deposition, Bednarz states that the person who added this notation was the "person in records," Jean Durant (now Jean Malick). He stated that he did not put that note in, did not know what it was regarding, and did not recall if his portion of the Report had been changed in any way.

Bednarz stated that he issued the citation based on probable cause, which consisted of the fact that he saw that "the bushes were cut down," the neighbor's information, and his belief that it was an "ongoing issue" because "we had been out there before for the same thing." However, he did not investigate whether someone else could have caused damage to the bushes and did not recall whether he took any pictures, but noted that, if he did, they would have been attached to his report. The citation was dismissed on May 17, 2012.

On May 18, 2012, Gosselin issued a Field Correction Notice to Baker because her shrubs were sharp and too tall. The first notice stated that the shrubs had "become a hazard to anyone on neighbor's driveway" because of their height, and that they had "sharp sticks" that could

"harm persons who may brush against them." In his deposition, Gosselin noted that they were tall and, when asked if it looked like they had been damaged, that "there was something cut, not the top, but maybe on the sides, and they were cut on an angle." He issued Baker another notice on June 4, 2012, noting that he had read her letter but that she still needed to trim the bushes to three feet high; he issued a final notice on August 1, 2012. She then complied and the bushes were trimmed down to three feet tall and several were removed to improve visibility backing out of the driveway. Gosselin stated that he typically gives notices to a violator when investigating a complaint of an ordinance violation.

Finally, Katz alleges that, on the evening of April 3, 2013, his parked vehicle was vandalized with anti-Semitic slurs written in a substance "that was supposed to resemble blood."

On the last day of discovery, April 15, 2015, the Plaintiffs filed a Motion to Compel, seeking additional discovery. However, one week later, on April 22, 2015, they withdrew their motion. The Defendant filed a Motion for Summary Judgment on July 15, 2015 and the Plaintiffs responded on August 19, 2015. In their response, the Plaintiffs asked the district court to require that the Village produce more discovery, and to allow the Plaintiffs to amend their response to the summary judgment motion once they had an opportunity to review the discovery. The Plaintiffs attached a Rule 56(d) affidavit from their attorney, who stated that she withdrew the Motion to Compel because she believed that the parties could "work to resolve the discovery dispute." Their attorney said that the Defendant indicated that it could not find additional documents, but that during depositions taken June 18, 2015, witnesses "attested to having documents available which were responsive" to the Plaintiffs' requests. She further stated that counsel for Plaintiffs emailed the Defendant on August 7, 2015 asking for additional documents, but that the Defendant did not respond.

The Plaintiffs now appeal, arguing that the district court erred in granting summary judgment on their equal protection and due process claims, and in denying their request for additional discovery.

## II.  ANALYSIS

### A.  Standard of review

This court reviews a district court's grant of summary judgment de novo.  *Back v. Nestle USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012).

### B.  Equal protection claim

The Plaintiffs allege that the Defendant violated their equal protection rights through selective enforcement of ordinances, and that the treatment was based on their religious affiliation.  The district court held that much of the activity motivating the Plaintiffs' equal protection claim was barred by the statute of limitations, and that the "continuing violations doctrine" did not apply as an exemption.  Further, the district court held that the factual allegations that were not barred by the statute of limitations did not show a violation of the Plaintiffs' equal protection rights.  We address these determinations below.

#### 1.  Statute of limitations

In Michigan, the statute of limitations for federal claims brought under 42 U.S.C. § 1983 is three years.  *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009).  "[T]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury that is the basis of the action."  *Id.* at 646.  However, the running of the limitations period can be tolled under the "continuing violation" doctrine.  *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003).  The Sixth Circuit uses this doctrine "most commonly in Title VII cases, and rarely extends it to § 1983 actions."  *Id.* at 267.  A plaintiff can establish a continuing violation if he or she shows a

"longstanding and demonstrable policy of discrimination." *Id.* at 268. "This requires a showing by a preponderance of the evidence that some form of intentional discrimination against the class of which plaintiff was a member was the . . . standing operating procedure." *Id.* at 267 (quoting *Burzynski v. Cohen*, 264 F.3d 611, 618 (6th Cir. 2001)). The plaintiff "must demonstrate something more than the existence of discriminatory treatment in his case." *Id.* at 268 (quoting *Haithcock v. Frank*, 958 F.2d 671, 679 (6th Cir. 1992)).

The Plaintiffs' action was filed on April 5, 2013, and thus the relevant date for the statute of limitations is April 5, 2010. The district court held that the continuing violation exception did not apply because "the preponderance of the evidence does not establish that some form of intentional discrimination against Jewish individuals was standard operating procedure in Beverly Hills or among officers. Rather, the facts as alleged by Plaintiffs show that one individual officer – Officer Byrwa – was utterly intolerant, and on one occasion, Officer Byrwa discriminated against Katz on the basis of religious affiliation." *Katz v. Village of Beverly Hills*, No. 13-11568, 2016 WL 1259086, at *6 (E.D. Mich. Mar. 31, 2016). The Plaintiffs have not shown a policy of discrimination and have not demonstrated more than the existence of discriminatory treatment in their own case. Thus, we agree that the continuing violations doctrine does not apply and that all injuries that occurred before April 5, 2010 are time barred.[3]

2. Factual allegations after April 5, 2010

The Plaintiffs argue that there were separate, stand-alone events that occurred after this date that give rise to an equal protection claim. The district court, however, found that the events occurring after April 5, 2010 did not establish an equal protection claim sufficient to withstand the Defendant's summary judgment motion. The Constitution provides that "[n]o State shall . . .

---

[3]Further, Plaintiffs labeled allegations occurring before April 5, 2010 as "historical background" only in their Third Amended Complaint.

deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "[This] clause is 'essentially a direction that all persons similarly situated should be treated alike.'" *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 864 (2012) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "'To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class.'" *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (citation omitted).

The Plaintiffs argue that the Village treated the Plaintiffs and Baker differently, and that this different treatment was based on religious discrimination in violation of their equal protection rights. In support of their claim, they point first to the close proximity in time between when Katz was cited for causing damage to Baker's bushes on April 5, 2012, and when Baker was given a notice that her bushes were too tall on May 18, 2012. The Plaintiffs argue that it would have been impossible for Katz to have cut down Baker's bushes and then, only six weeks later, for them to be high enough for Gosselin to give Baker a correction notice. However, the allegation was not that Katz destroyed all of Baker's bushes, but rather that he damaged and stomped her bushes a month and a half before Baker was given a notice about their height. The pictures labeled April, 2012, attached to the Third Amended Complaint, show a small section of the bushes down, but other sections that remained intact and tall.

Next, the Plaintiffs argue that the parties were treated differently because, while Katz was issued a citation by Bednarz for damaging Baker's bushes, Baker was issued not a citation, but a series of three notices, by Gosselin for having bushes that violated a municipal ordinance. The Plaintiffs complain that for the two complaints regarding bushes, Baker's violation was handled by a code officer and Katz's by a police officer. But, as the district court noted, the citation and

notices involved the violation of offenses of unequal severity (a criminal misdemeanor vs. violation of a municipal ordinance), which entail different enforcement officers and procedures. *See Katz*, 2016 WL 1259086, at *6-7.

Finally, the Plaintiffs point to the notation that appears under Bednarz's writing on his report, stating in its entirety "BVDURANTJ" and "[t]o correct bias in the report." In his deposition, Bednarz said that he did not know why this notation was added or whether there were any changes made to his report. Without more in the record, it is difficult to interpret this phrase. The Plaintiffs did file a Motion to Compel to obtain additional discovery including interrogatories and police records, but withdrew the Motion a week later. The Plaintiffs did not renew their Motion to Compel, and did not attach a Federal Rule of Civil Procedure 56(d) affidavit to their response to the Defendant's Motion for Summary Judgment until months later. While this "bias" reference is concerning, the Plaintiffs have failed to provide sufficient evidence from which we could find a genuine dispute of material fact as to whether religious discrimination motivated the issuance of Katz's citation.

As the district court noted, even if the Plaintiffs had been able to demonstrate selective treatment, they did not "demonstrate that this treatment was motivated by religion." *Katz*, 2016 WL 1259086, at *7. Accordingly, Plaintiffs have failed to establish a violation of their equal protection rights.

## C. Other constitutional claims

The Plaintiffs also allege that the district court erred in dismissing their municipal liability claim. To show municipal liability, the Plaintiffs must show that an official municipal policy caused a constitutional violation. Municipalities can be liable under § 1983 if "official municipal policy of some nature caused a constitutional tort." *Monell v. Dept. of Social Servs. of*

*New York*, 436 U.S. 658, 691 (1978). A "municipality cannot be held liable *solely* because it employs a tortfeasor," *id.*, and also "cannot be liable . . . absent an underlying constitutional violation by its officers," *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 900 (6th Cir. 2004) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Therefore, "[t]o set forth a cognizable § 1983 claim against a municipality, a plaintiff must allege that (1) agents of the municipality, while acting under color of state law, (2) violated the plaintiff's constitutional rights, and (3) that a municipal policy or policy of inaction was the moving force behind the violation." *Memphis, Tenn. Area Local, Amer. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 379 (1989)). A custom or policy can be shown by "proof of the knowledge of policymaking officials and their acquiescence in the established practice." *Id.*

The Plaintiffs allege that Village officers violated due process by issuing Katz a citation without conducting a proper investigation. They argue that the Village officials knew about this practice because public safety officials kept daily logs of their activity, and thus that their actions constituted official Village policy for which the Village should be held liable under *City of Memphis*, 361 F.3d at 902. In sum, Plaintiffs allege that there were genuine issues of material fact that should have precluded the grant of summary judgment for the Defendant.

The Plaintiffs point to *Paterek v. Village of Armada*, 801 F.3d 630 (6th Cir. 2015), in support of their argument that the Village violated their substantive due process rights. In *Paterek*, the court found that a grant of summary judgment was inappropriate on a municipal liability claim because genuine issues of material fact existed as to whether officers arbitrarily enforced the plaintiffs' land use permit. The court noted that substantive due process "protects citizens from being subject to 'arbitrary or irrational zoning decisions.'" 801 F.3d at 648

(citation omitted). It examined whether the plaintiffs had shown both that a "constitutionally protected property or liberty interest exists" and that it had "been deprived through arbitrary and capricious action." *Id.* (quoting *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008)).

The court first looked to state law to determine whether there was a recognized property interest and, specifically, whether the plaintiffs had a "legitimate claim of entitlement" or a "justifiable expectation" to rely on the zoning authorization. *Id.* (citation omitted). It determined that, under Michigan law, they did have such an interest because they had been granted a Special Approval Land Use permit and their entitlement was based on the express terms of that permit. *Id.* In determining whether there had been arbitrary and capricious action, the court noted that the plaintiffs were cited for violating their "outside storage" permit. *Id.* The court found that the characterization of plaintiffs' barbeque grill as outside storage "strains credulity," and that the defendant "admitted to handling Paterek in a different manner than other business owners." *Id.* Finally, it noted that the defendant had "failed to offer any explanation" as to why it tried to prosecute the plaintiffs for failing to request a new permit when the defendant knew the permits ran with the land; ultimately, the court found that summary judgment was inappropriate. *Id.* at 649.

Assuming that Katz's injury is based on the citation dismissed in 2012, he has not demonstrated the same arbitrary treatment that the court found in *Paterek*. *See id.* at 648. There, the defendant admitted to treating the plaintiffs differently than it treated others and the court found that the enforcement behavior "strain[ed] credulity." *See id*. In this case, however, there is little evidence illustrating differing treatment. Although the Plaintiffs point to the discrepancy in treatment when Katz was issued a citation and Baker was issued a warning, both the alleged

-11-

misconduct at issue (e.g., a criminal misdemeanor versus the violation of a municipal ordinance) and the officers involved were different. Though it appears that Bednarz conducted a less-than-thorough investigation before issuing Katz a citation, the Plaintiffs have not provided evidence to show that the treatment was based on religious discrimination. Because the Plaintiffs have not established that a genuine dispute of material fact exists regarding their municipal liability claim, we affirm the district court's grant of summary judgment on this constitutional claim.

**D. Request for additional discovery**

Finally, the Plaintiffs argue that the district court should have granted their request for additional discovery. Rule 56(d) states that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the court can "defer considering the motion or deny it[,] allow time to obtain affidavits or declarations or to take discovery[,] or . . . issue any other appropriate order." Fed. R. Civ. P. 56(d). "Because Rule 56[(d)] makes the trial court's allowance of additional discovery discretionary, our standard of review is abuse of discretion." *Siggers v. Campbell*, 652 F.3d 681, 695-96 (6th Cir 2011) (quoting *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 426 (6th Cir. 2009)). The district court noted that the Plaintiffs withdrew their Motion to Compel a week after filing it, and held that they had a reasonable time for discovery. As discussed earlier, the Plaintiffs did not renew their withdrawn Motion, but rather attached a Rule 56(d) affidavit to their response to the Defendant's Motion for Summary Judgment months later. We hold that the district court did not abuse its discretion in denying Plaintiffs' 56(d) discovery request.

**III. CONCLUSION**

For the foregoing reasons, we AFFIRM.