NOT FOR PUBLICATION
File Name: 05a0566n.06
Filed: July 6, 2005

No. 04-3437

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


EDWARD D. RUSSELL;
LIZETTE M. RUSSELL,

       Plaintiffs-Appellants,

                                        ON APPEAL FROM THE
v.                                   UNITED STATES DISTRICT
                                        COURT FOR THE SOUTHERN
GTE GOVERNMENT SYSTEMS        DISTRICT OF OHIO
CORPORATION, et al.,

       Defendants-Appellees.

_____/

BEFORE:   SUHRHEIHRICH and GILMAN, Circuit Judges; and ACKERMAN[*], District Judge.

      SUHRHEINRICH, J., Plaintiff Edward D. Russell[1] ("Plaintiff" or "Russell") appeals from the order of the district court denying Plaintiff's motion for reconsideration, and granting Defendant GTE Government Systems Corporation ("GTE")'s motion for reconsideration in this diversity action for breach of contract and promissory estoppel arising out of Russell's employment with GTE. We AFFIRM.

I.

_____

    [*]The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

    [1]Plaintiff Lizette Russell was dismissed as a party plaintiff with the filing of the First Amended Complaint.

Russell is a systems engineer with experience in the operation and maintenance of satellite communications equipment. In 1985, GTE hired him to work on several defense-related contracts with the United States Government. From 1985 until 1990, Russell worked as the Technical Director of Engineering at LadyLove Field in Japan. From 1992 to 1993, he was the Field Site Manager for the Phoenix Project in San Vito, Italy. From 1993 to 1998, he was the Systems Engineering Manager at the Royal Air Force Base in Feltwell, England.

As part of each assignment, Russell was given a Field Assignment document. The documents outlined various terms of the assignment, including compensation for travel, field premium, housing allowance, moving allowance, tuition, authorized dependent visits, income tax, overtime, home leave, expense reports, time cards, a no fault clause, and the official retirement date.[2]

In August 1993, while still on assignment in San Vito, Italy, Russell began negotiating with GTE regarding the Atlas Project in Feltwell, England. Russell testified that he had discussions with GTE's human resources director, Joyce Yaksick, regarding the terms and conditions for the assignment at Feltwell. Russell alleges that the parties entered into an oral contract at this time, which was later reduced to writing on April 8, 1994. On that date, Russell signed a Field Assignment document relating to the Feltwell assignment (the "Field Assignment"). The agreement had an effective period of August 21, 1993, to September 30, 1994.

Regarding standby pay, the Field Assignment document explained that "[r]equired standby time worked will be paid at the rate of 25% of the actual hours on standby." Russell complains that,

---

[2]The parties disputed below whether a contract existed. The district court overruled GTE's motion for breach of contract on the grounds that none existed. The parties do not challenge this ruling on appeal. *See Russell v. GTE Government Sys. Corp.,* 232 F. Supp. 2d 840 (S.D. Ohio 2002).

although he was required to carry a beeper and be on-call, he was not compensated for his on-call backup time, contrary to GTE policy.

In November 1994, Pat Molvar, GTE's Director of Human Resources and Safety, informed Feltwell employees that field premiums and housing allowances would be reduced in an effort to retain the government contract. At this time, GTE offered Russell and the other Feltwell employees a separation agreement. The separation agreement provided that Feltwell employees either accept the changes in the field premium and housing allowance in exchange for three more years of employment, or be relocated under the existing policies at a date to be determined, not later than April 30, 1995. Employees were further instructed to "fill out the applicable form and give it to your Site Manager" if they wished to terminate their field assignment, and simply to "do nothing" if they wished to continue their field assignment.

Russell testified in his deposition that he found neither choice acceptable, but "chose to stay." He did not sign the release form. Russell also testified that Grubb threatened retaliatory action if the Feltwell employees voiced any objections to the changes. According to Russell, Grubb "didn't elaborate, other than to say it will impact the people's careers" if they complained.

On January 1, 1995, the field premium pay of all Atlas GTE employees was reduced from 15% to 10%. On October 1, 1995, the housing allowance was reduced to U.S. State Department rates.

In May 1998, Russell signed an agreement to remain on the Atlas project until its completion on October 1, 1998, in exchange for a retention bonus in the amount of $12,554.00. In July 1998, Russell began making future employment plans. Russell claims that GTE induced him to stay on site until the project was completed by promising him that he would receive full joint travel

regulation ("JTR") lodging, and meals and incidental expenses ("M&IE") per diem for himself, and one-half JTR and MI&E for each of his four dependents, but that GTE actually paid only a portion of what it had promised. On October 1, 1998, Russell left Feltwell, England, and GTE's employment.

Russell filed this action on July 2, 1999, in the Greene County Court of Common Pleas. On September 29, 1999, GTE removed the case to the United States District Court for the Southern District of Ohio. On December 17, 1999, Russell filed his First Amended Complaint with leave of Court. On July 13, 2000, Russell filed his Second Amended Complaint, with leave of Court, alleging breach of contract based on GTE's failure to pay him standby pay from October 1993 to June 1996 (Count One); breach of contract based on GTE's failure to pay standby pay from June 1996 through September 1998 (Count Two); breach of contract for reducing his field premium pay on January 1, 1995; breach of contract due to an alleged reduction in Russell's housing allowance on October 1, 1995 (Count Four); promissory estoppel based on GTE's failure to pay the promised JTR and M&IE (Count Five); and promissory estoppel based on the allegations of Counts One through Four (Count Six). Russell claimed that GTE owes him in excess of $328,500.

On December 17, 2001, Russell moved for summary judgment. On January 17, 2002, GTE moved for summary judgment and also opposed Russell's motion. On September 10, 2002, the district court granted partial summary judgment in favor of GTE. *See Russell v. GTE Government Sys. Corp.*, 232 F. Supp. 2d 840 (S.D. Ohio 2002). The district court denied Russell's motion in its entirety. *Id.* at 867.

On November 8, 2002, GTE moved for reconsideration of the portions of the order denying it summary judgment. On November 25, 2002, Russell filed a motion to strike GTE's motion for

reconsideration. On February 21, 2003, the district court denied Russell's motion to strike, granted GTE's motion for reconsideration, and granted summary judgment to GTE on all of Russell's claims. On March 5, 2003, Russell moved for reconsideration. On May 29, 2003, Russell moved for leave to file a third amended complaint. On January 15, 2004, Russell filed a motion to file a supplemental reply. On January 28, 2004, the district court issued a notation order "sustaining [94] Motion for Leave to File." On February 19, 2004, GTE filed a motion for reconsideration of the Notation Order, or, in the alternative, a motion to dismiss or for summary judgment on the Third Amended Complaint. On March 24, 2004, the district court issued a decision and entry denying Russell's motion for reconsideration and granting GTE's motion for reconsideration of the notation order.

Russell filed a notice of appeal on March 31, 2004, appealing only from the March 24, 2004 decision and entry. Thus, the only ruling before us is the district court's ruling denying Russell's motion for reconsideration.[3]

## II.

When a Rule 59(e) motion seeks reconsideration of a grant of summary judgment, we conduct a *de novo* review. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e).

---

[3]Russell did not appeal from the district court's decisions awarding summary judgment to GTE or the February 25, 2003 judgment. Because he specified only certain rulings, his appeal is limited to those determinations. *See* Fed. R. App. P. 3(c)(1)(B) (stating that the notice of appeal must "designate the judgment, or order or part thereof being appealed") *see also United States v. Universal Mgmt. Serv. Ins.*, 191 F.3d 750, 756 (6th Cir. 1999) (stating that "[i]f an appellant . . . chooses to designate specific determinations in his notice of appeal–rather than simply appealing from the entire judgment–only the specified issue may be raised on appeal").

This Court has held that a Rule 59(e) motion to alter or amend final judgments may be granted based upon a clear error of law, newly discovered evidence, or to prevent a manifest injustice. *GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).

## III.

Russell raises three arguments.[4]

## A.

First, Russell argues that the district court erred in determining that Russell acquiesced to all claims involving standby pay, housing allowance, and field premium benefits.

Under Colorado law,[5] "[a] contract for employment terminable at the will of either party may be supplemented by new terms of employment accepted by acquiescence." *Pittman v. Larson Dist. Co.*, 724 P.2d 1379, 1384 (Colo. App. 1986) (citing *Linder v. Midland Oil Refining Co.*, 40 P.2d 253, 254 (Colo. 1935))*; see also Linder*, 40 P.2d at 254 (Colo. 1935) ("[T]he original agreement was terminable at the will of either party; the company terminated it on November 30, 1932, and offered a different arrangement, and by conduct Linder accepted the offer."). Further, "whether the employee protested contract changes is an important factor in determining whether the employee has acquiesced in a new contract by continuing to work." *Pittman*, 724 P.2d at 1384.

Russell admitted, and the district court found, that Russell was an at-will employee. As the district court also held, Russell accepted and acquiesced in GTE's standby pay policy at Feltwell,

---

[4]Russell does not challenge the district court's rulings on Count Two based on estoppel and on Count Six. Counts Two and Six are therefore not before this Court. *See Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989) (noting that this Court usually declines to consider issues not raised in the appellant's opening brief).

[5]GTE argued in the district court that English law applied. The district court ruled that Colorado law applied to this case. *Russell*, 232 F. Supp. 2d at 848-52.

under which employees were not paid standby duty pay for carrying a beeper and being on the on-call backup list.  As the district court held on reconsideration,

> Plaintiff's failure to act and to complain to management, could <u>not</u> be construed as mere silence, . . . for a period of five years is unreasonable . . . . Plaintiff was aware of the construction given to the alleged employment agreement by GTE Government, <u>i.e.</u>, that the agreement did not provide for payment for the time that he was listed on the on-call backup list, and Plaintiff cannot now, after the cessation of his employment relationship, argue for a different construction.

Russell manifested his acquiescence by signing his time cards and time sheets certifying that he was reporting that the hours worked were the hours for which he should have been paid from October 1993 to October 1998, and by continuing to work and accept pay checks without objection for five years.

Russell also accepted and acquiesced in the reduced field premium and housing allowance by affirmatively choosing to remain at Feltwell, without complaint, for nearly four years after being given the option in late 1994 either to stay under the reduced policy or return to the United States at GTE's expense.  Finally, Russell accepted and acquiesced in the hotel compensation by accepting, without reservation, the payments offered by GTE, and by signing the expense report reconciliation forms without complaint.

In short, Russell knew the terms of his employment and how GTE construed those terms. Russell also knew that he was an at-will employee and that he could be terminated, or quit, at any time for any lawful reason.  Instead, he chose to remain an employee under the terms offered to him, and to not lodge any objections.  As the district court determined on reconsideration, Russell's continued employment constituted acceptance of these new terms.

Russell admits that he did not complain to GTE about the terms of his employment, but claims that he took "affirmative action" by "refusing to sign the release or agreement to continue

his employment for another three years at Feltwell at the reduced compensation." This argument is without merit. First, it only related to the reduced field premium and housing allowance policy. Further, Molvar informed the Feltwell employees that if they chose to stay employed at Feltwell, they did not need to sign or do anything, which is the option Russell chose.

Russell also claims on appeal that his silence was motivated by duress; namely that Feltwell Site Manager Lee Grubb threatened retaliation in the form of termination and "blacklisting" in the government contract arena if any of the Feltwell employees protested the reductions. Russell did not make this allegation until his motion for reconsideration, however. A Rule 59(e) motion to alter or amend is not the proper vehicle to raise arguments that should have been made before judgment. *See GenCorp*, 178 F.3d at 834; *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).

In any event, the argument is without merit. "In order to establish duress under Colorado law, a party must show an unlawful threat or other improper means, so that the other party's will 'was so taken away that he could not properly enter into [the] contract.'" *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1231 (10th Cir. 1999) (quoting *Wiesen v. Short*, 604 P.2d 1191, 1192 (Colo. App. 1979)). Russell's fear of losing his job, without more, does not constitute duress or coercion. *See Bennett*, 189 F.3d at 1231 (holding that employer's "threat" of downsizing or outsourcing did not constitute duress under Colorado law, and stating that the employer was completely within its legal rights to downsize or outsource, and that the "pressures" felt by the employees facing the difficult choice between accepting additional benefits or pursuing legal rights did not indicate lack of free will); *see also Borg-Warner Protective Serv. Corp. v. Gottlieb*, 116 F.3d 1485, 1997 WL 349043, at *3 (9th Cir. June 25, 1997) ("The threat of losing at-will employment if the employee

refuses a lawful request does not constitute 'fraud' or 'overwhelming economic power.'"). Under Colorado law, "'[t]hreats to do what one may lawfully do [are] not duress.'" *Bennett*, 189 F.3d at 1231 (quoting *Heald v. Crump*, 215 P. 140, 141 (Colo. 1923)).

Russell also contends that he was subject to coercion and duress regarding the reduced field premium and housing allowance policies. This argument likewise fails, for the reasons stated above.

In sum, the district court did not err in concluding that Russell acquiesced in the reductions in field premium or housing allowance, or the terms of standby duty pay.

Russell's contention that the district court erred in granting summary judgment on his promissory estoppel claim (Count Five) is also without merit. Russell could not have detrimentally relied on a promise concerning the amount of hotel compensation because he signed an agreement on May 28, 1998, in exchange for a lump sum bonus of $12,554. In his July 16, 1998 memo to Feltwell Site Manager Michael Vanover, Russell requested that his dependents be paid only for M&IE. GTE paid for his hotel stay as requested. Furthermore, Russell sold his home and moved into a hotel on July 13, 1998, so he could not have relied on Vanover's alleged promise concerning hotel compensation.

Similarly, Russell offered no evidence that he turned down any other employer's job offers prior to August 1, 1998, and, in fact, Russell admitted that he did not begin a job search until after that date. Although Russell was considering taking another job with GTE in Dayton, Ohio, he was not offered any GTE job in 1998. Finally, Russell was paid a total of $392 per day ($149 for housing and $243 for meals and incidentals), which Russell admitted exceeded the cost of the stay. Finally, Russell admitted to the district court in his motion for reconsideration that he did not suffer "an actual financial or pecuniary loss as a result of the breach of promise." Since he did not rely on

the alleged promise to his detriment, he cannot make out a promissory estoppel claim. *See Smalley & Co. v. Emerson & Cuming, Inc.*, 808 F.Supp. 1503, 1515 (D. Colo. 1992) (promissory estoppel claim failed where the plaintiff did not show detrimental reliance), *aff'd*, 13 F.3d 366 (10th Cir. 1993). *Troutman v. Webster*, 257 P. 262, 264 (Colo. 1927), cited by Russell, is distinguishable. There, the plaintiff quit his job in reliance on a promise. That is not the case here.

**B.**

Russell also argues that the district court erred by not allowing him to file a responsive pleading to GTE's motion for reconsideration of the court's initial decision, and not allowing him to file a motion for reconsideration.

Issues of docket control are within the sound discretion of the trial court. *Jones v. Northcoast Behavioral Healthcare Sys.*, No. 02-4379, 2003 WL 23140062, at *2 (6th Cir. Dec. 12, 2003) (order). This Court will not interfere with the court's docket unless there has been a clear showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant. *Id.* (citing *in re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996)). In any event, the docket reflects that Russell was allowed to file a responsive pleading to GTE's motion for reconsideration; namely his Motion to Strike. The docket sheet does not indicate that Russell was denied the opportunity to file a motion for reconsideration. In fact, the docket sheet reflects that the court also granted Russell's motion to extend time to respond to Defendant's Memorandum in Opposition to Plaintiff's Motion to Strike. The record also shows that Russell was also permitted to file his own Motion for Reconsideration, which he filed on March 5, 2003. That motion was considered and denied.

Russell also maintains that the district court improperly allowed GTE's motion for reconsideration because the documents upon which GTE relied were not newly discovered evidence. However, there was no final judgment when the court entertained GTE's motion for reconsideration, so the strictures of Rule 59(e) did not apply. The district court was therefore free to reconsider or reverse its decision for any reason. *See Deimer v. Cincinnati Sub-Zero Prods. Inc.*, 990 F.2d 342, 346 (7th Cir. 1993) (and citations therein).

## C.

Lastly, Russell alleges that the district court erred when it dismissed his Third Amended Complaint. Russell filed his Third Amended Complaint on May 29, 2003, attempting to add a fraud claim based on alleged misrepresentations made to induce him to move to Feltwell, England. The district court issued a notation order granting Russell's leave to file it on January 28, 2004. GTE filed an answer to the Third Amended Complaint on February 10, 2004. Thereafter, GTE filed a motion for reconsideration of the notation order granting leave to file a third amended complaint. The court dismissed the complaint, prior to receipt of Russell's response. Russell contends that, once GTE filed its answer, the district court should have treated the subsequent motion as a motion for summary judgment under Fed. R. Civ. P. 56(c) and permitted him to present all relevant material.

Russell's argument obscures the fact that he did not move to amend his complaint until after final judgment issued. "Although leave to amend a complaint should be granted liberally when the motion is made pretrial, different considerations apply to motions filed after dismissal." *In re General Motors Corp. Anti Lock Brake Prods. Liability Litig.*, 174 F.R.D. 444, 446 (E.D. Mo. 1997), *aff'd,* 172 F.3d 623 (8th Cir. 1999). Amendments after judgment should only be allowed if the standards under Rule 59(e) or 60(b) are met. *See Twohy v. First Nat. Bank of Chicago*, 758 F.2d

-11-

1185, 1196 (7th Cir. 1985); *Oleson v. United States*, 27 Fed. Appx. 566, 570 (6th Cir. 2001) (unpublished).

The standard of review for a district court's denial of a motion to amend is abuse of discretion. *Northwestern Nat. Ins. Co. v. Joslyn*, Nos. 93-4266/4295/4332, 1995 WL 270995, at *5 (6th Cir. May 8, 1995) (per curiam) (noting that, like the denial of a Rule 59(e) motion, the standard of review for a district court's denial of a motion to amend a pleading or complaint under Rule 15(a) is abuse of discretion); *Diersen v. Chicago Car Exchange*, 110 F.3d 481, 489 (7th Cir. 1997). Undue delay or bad faith on the part of the movant, undue prejudice to the nonmovant, and futility may warrant the denial of a motion to amend the pleading. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The district court did not abuse its discretion in denying Russell leave to amend his complaint. Russell does not offer a good reason for his lengthy post-judgment delay. The attempt was also untimely. The district court's revised scheduling order provided that amendments to pleadings would not be allowed without leave of court after September 11, 2000. Russell did not attempt to file until two years after this date, and has not shown good cause for failing to meet the court's deadline. *See* Fed. R. Civ. P. 16(b) (providing that "[a] schedule shall not be modified except upon a showing of good cause and leave of the district judge"); *see also Dyer v. Casey*, No. 94-5780, 1995 WL 712765, at *3 (6th Cir. Dec. 4, 1995) (per curiam) (holding that a motion to file an amended complaint, after the district court has issued a scheduling order, is governed by Fed. R. Civ. P. 16(b) and 15(a)).

In any event, Russell waited almost four years to file his third amended complaint to add a fraud claim. The parties had engaged in extensive discovery, filed motions for summary judgment and motions for reconsideration, and the district court had already considered and awarded judgment

on all claims. Thus, both undue delay and Russell's part and prejudice to GTE warranted the denial of his motion.

The proposed amendment would also be futile, because, at a minimum, it was untimely. The statute of limitations for misrepresentations actions in Colorado is three years. Colo. Rev. Stat. § 13-80-101(c). The misrepresentations would have been made prior to Russell's arrival in Feltwell, England on October 1, 1993. Grubb had informed him of the standby pay duty arrangement by November 1993. Similarly, Russell and the other Feltwell employees knew in November 1994 that the field premium and housing allowance would be reduced. Yet Russell did not file his original complaint until July 2, 1999. Thus, even if Russell's proposed Third Amended Complaint related back to the original complaint, the fraud claim was barred.

Finally, it should be noted that the district court indicated that if the matter were remanded by this Court, Russell was "welcome" to renew his motion for leave to file a third amended complaint. *Cf. Johnson v. Levy Org. Dev. Co.*, 789 F.2d 601, 611 n.8 (7th Cir. 1986) (stating that until a plaintiff "file[s] a motion to vacate the judgment against him and ha[s] that judgment lifted, the court [does] not have to consider the merits of whether to allow him to amend his complaint").

**IV.**

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.