NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0646n.06

No. 10-1222

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 31, 2011*

LEONARD GREEN, Clerk

SHARON L. SCHELLENBERG and )
DAVID W. RIGGLE, )
                                          )
        Plaintiffs-Appellants, )
                                          )   ON APPEAL FROM THE UNITED
v.                                   )   STATES DISTRICT COURT FOR THE
                                          )   WESTERN DISTRICT OF MICHIGAN
TOWNSHIP OF BINGHAM and )
ROBERT W. FOSTER, )
                                          )
        Defendants-Appellees. )

Before: MOORE and GIBBONS, Circuit Judges, and BORMAN, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiffs-appellants Sharon L. Schellenberg and David W. Riggle appeal a district court order granting summary judgment to defendants-appellees the Township of Bingham and Robert W. Foster. They argue pursuant to 42 U.S.C. § 1983 that the defendants violated their equal protection rights by treating them unfavorably during the application process for a special land use permit. Schellenberg and Riggle contend that the district court's disparate treatment analysis was flawed, that the court failed to construe the facts in the light most favorable to them, and that the court improperly refused to grant their motion to alter or amend

---

[*]The Honorable Paul D. Borman, United States District Judge for the Eastern District of Michigan, sitting by designation.

-1-

judgment pursuant to Federal Rule of Civil Procedure 59(e). For the reasons that follow, we affirm the district court.

I.

On February 20, 2006, Schellenberg and Riggle applied to Bingham Township, Leelanau County, Michigan, for a cluster-housing special land use permit ("SLUP") to build a second house, known as the Baywatch project, on their three acres of property. The plaintiffs sought to reserve 1.5 acres of their property as undeveloped land and to build the second house on the remaining 1.5 acres. Bingham Township is zoned for one house per acre; however, the Bingham Township Zoning Ordinance ("Zoning Ordinance") allows residents to apply for cluster-housing permits in order "to retain the rural atmosphere of Bingham Township, and to protect the wetlands, farmlands, woodlands, and other open space." Because clustered housing is deemed a special land use, Article XI of the Zoning Ordinance requires applicants to obtain a SLUP from the Township's Planning Commission ("Commission") and sets forth the requirements for approval. SLUP applications, in pertinent part, must comply with the provisions of the health department. Under Article XI, the Commission may grant a SLUP "after the plans for development have been presented at a public hearing, and reviewed by all affected government agencies." If the Commission denies the SLUP, the applicant may re-apply after "the expiration of 120 days from the date of denial."

On March 3, 2006, after submitting their application, the plaintiffs received a letter from Charles E. Grant, the Township's Environmental Sanitarian, apprising them of potential sewage disposal problems on their proposed land division. The letter noted that their property "did not show any area that meets [the Township's] conventional sanitary code." By correspondence dated March

26, 2006, the plaintiffs also were informed by the Township Planner, Rochelle Rollenhagen, of various deficiencies in their application: it did not show the proposed location of any new buildings, the topography of the proposed construction site—including the natural features and vegetation— or sewage disposal plans. Rollenhagen's letter stated that the Commission would consider the plaintiffs' application withdrawn unless they supplemented it with the required information within 30 days. On April 16, Schellenberg and Riggle submitted supplemental data to the Commission, which they allege cured any problems in their application.

Although the record indicates that the plaintiffs' application initially was scheduled for review at the Commission's meeting on July 6, 2006, the hearing was delayed upon the recommendation of the Township's attorney, Robert Parker, who advised postponing action until a dispute concerning the plaintiffs' land division application for the project was resolved.[1] On September 15, 2006, after meeting with the plaintiffs, Steven Patmore, the Zoning Administrator, advised Schellenberg and Riggle that the Commission would review their application and, "if complete . . . [would] send out Public Notice and add the project to the agenda of a Planning

---

[1]Article X § 10.6 of the Zoning Ordinance requires applicants seeking cluster housing permits to abide by the requirements of Article XI and to "meet the requirements of the Articles pertaining to the method of conveyance. (i.e. Site Condominium, Subdivision, Land Division)." Rollenhagen's March 26 letter stated that "it is unclear from your application as to how you plan to convey the proposed property in the project. If this is a Land Division, the Township will require a complete application for Land Division to be submitted with the requested supplemental information." However, following discussions during the summer, Steven Patmore, the Zoning Administrator, advised the plaintiffs to proceed with their SLUP application and then to seek land division approval.

Commission meeting." Patmore assured the plaintiffs that he would "treat [their] application no different than any other."

On November 2, 2006, the plaintiffs' application was scheduled for a public hearing at the Commission's December 7 meeting. Schellenberg acknowledges that she received written notice of the December 7 hearing, and although the plaintiffs could not attend, they neither objected to the date nor requested a postponement. At the hearing, the Commission denied their application by a 6–1 vote. Schellenberg and Riggle received the Record of Action concerning the Commission's decision "sometime around Christmas."

On April 26, 2007, after meeting with Parker, Rollenhagen, and Patmore, the plaintiffs were informed in writing of their right to file a new SLUP application because the 120-day waiting period had elapsed. Although Schellenberg and Riggle had submitted revised plans to the Township in February 2007, the April 26 letter advised them that "there was no Application or fee transmitted to the Township, nor had the 120 days expired," and that a new application was therefore required. The record indicates that the plaintiffs did not file a new application.

Instead, the plaintiffs filed suit against Bingham Township in the Leelanau County Circuit Court on April 30, 2007, appealing the denial of their SLUP application. *See Schellenberg, et al. v. Bingham Twp.*, No. 07-7475-AW (Leelanau Cnty. Cir. Ct. filed Apr. 30, 2007.) The plaintiffs alleged that the Commission violated the Township's Zoning Ordinance by denying their application; that the denial "was purely arbitrary, capricious, and unfounded"; and that it "resulted in a temporary taking of [their] property." They sought both monetary damages based upon an alleged taking of property and a writ of mandamus to compel the Commission to approve their

application. The defendants, in turn, sought summary disposition of the claims on the grounds that "the state court lacked subject matter jurisdiction because plaintiffs failed to timely appeal from the Planning Commission's decision."

On July 25, 2007, while their state-court case was pending, the plaintiffs filed suit in federal district court against the Township and former Township Supervisor, Robert Foster. In their Amended Complaint, filed in January 2008, Schellenberg and Riggle alleged under 42 U.S.C. § 1983 that the defendants had violated the plaintiffs' equal protection rights under the United States and Michigan Constitutions by subjecting them to disparate treatment and illegitimate animus during the SLUP application process. On their claim of disparate treatment, the plaintiffs contended that the defendants "intentionally imposed requirements on Plaintiffs in regard to the Baywatch project not required of similarly situated individuals on similar projects." On their claim of illegitimate animus, the plaintiffs contended that Township employees, including Foster, harbored ill-will based upon the "numerous disputes that the Defendants and Plaintiffs have had over several years, several of which resulted in litigation."[2]

On September 4, 2007, the state court issued an order granting the Township's motion for summary disposition. Schellenberg and Riggle sought reconsideration of the state court order and also moved to disqualify the state court judge based upon allegations of bias and financial interest

[2]The plaintiffs have a contentious legal history with the Township. Although these disputes are unrelated to the present litigation, Schellenberg and Riggle first sued Bingham Township in 2004 in the Leelanau County Circuit Court for alleged violations of Michigan's Land Division Act and the Township's Land Division Ordinance. The plaintiffs filed two additional suits in the circuit court for alleged violations of the Freedom of Information Act ("FOIA") and Michigan's Open Meetings Act.

in the matter. However, these motions were denied, and the plaintiffs did not pursue further appeals of the state court decision.

In November 2008, the defendants filed a motion to dismiss the federal case pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) or, in the alternative, sought summary judgment pursuant to Fed. R. Civ. P. 56. The defendants argued that Schellenberg and Riggle failed to exhaust their administrative remedies by electing not to reapply for a cluster-housing permit; that the plaintiffs' Complaint served as an improper appeal from the state court's judgment that was barred by the *Rooker-Feldman* doctrine or by claim-preclusion; and that the plaintiffs had not alleged viable equal protection claims against the Township or Foster. In particular, the defendants noted that Schellenberg and Riggle had not identified any similarly situated individuals and that the Commission had a rational basis for rejecting the plaintiffs' application based upon sewage disposal concerns.

In July 2009, following unsuccessful settlement negotiations, the district court granted the defendants' motion for summary judgment on the ground that Schellenberg and Riggle had not demonstrated disparate treatment and thus had failed to establish a cognizable "class of one" equal protection claim. The court rejected the plaintiffs' argument that "all applicants" were similarly situated to the plaintiffs and also rejected the plaintiffs' alternative argument that the Michele and Alan Weverstad, owners of the adjacent Lee Point's Island View project ("Island View"), were similarly situated. Rather, the court noted that "unlike the [Island View] project, the Baywatch project had sewage issues that drew the attention of the health department." The court thus

concluded that "[i]n at least this material respect, the Baywatch project is *not* similarly situated to the [Island View] project."

Thereafter, Schellenberg and Riggle filed a motion to alter or amend judgment under Fed. R. Civ. P. 59(e) on the grounds that they had established disparate treatment and that the court's equal protection analysis was deficient. The district court denied the plaintiffs' Rule 59(e) motion on January 25, 2010, and the plaintiffs timely appealed.

II.

We review a district court's grant of summary judgment *de novo*. *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 569 (6th Cir. 2008). A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of showing that "there is no dispute regarding any genuine issue of material fact, and this burden can be satisfied by demonstrating . . . that there is no evidence underlying the nonmoving party's case." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008). Once the moving party meets this burden, "the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Id.*; Fed. R. Civ. P. 56(c)(1) (describing the materials a party may rely upon to support its assertions).

In reviewing the record, we view factual evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Slusher*, 540 F.3d at 453. Our

ultimate inquiry "is whether the state of the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

III.

The plaintiffs challenge the district court's equal protection analysis. They contend that, owing to their acrimonious legal history with the Township, the Commission imposed "hurdles" in their application process "that other applicants were free to skip completely." In reply, the defendants maintain that the plaintiffs have not identified any similarly situated individuals and have not established that the Commission acted with discriminatory animus.

The plaintiffs have raised their equal protection claim under 42 U.S.C. § 1983.[3] The Fourteenth Amendment's Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. Under the Equal Protection Clause, "the states cannot make distinctions [that] . . . burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 312 (6th Cir. 2005); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). We have recognized that

---

[3]To state a viable claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law." *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The liability of a local government, such as the Township, under § 1983 "depends solely on whether the plaintiff's constitutional rights have been violated as a result of a 'policy' or 'custom' attributable to the county or local government." *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000) (*en banc*). Although government officials may be entitled to qualified immunity in certain instances, this court need not address that issue because the plaintiffs have failed to demonstrate any deprivation of their Fourteenth Amendment equal protection rights.

"[w]here, as here, a plaintiff alleges a violation of the third type, it is said to proceed on a 'class of one' theory." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 836 (6th Cir. 2009) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006)).

To prevail on a "class of one" equal protection claim, the plaintiffs must prove that the government treated similarly-situated individuals differently. *Braun*, 519 F.3d at 574. Materiality is an essential element of this test. *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005). Thus, to satisfy this inquiry, the plaintiffs "must allege that [they] and other individuals who were treated differently were similarly situated in all material respects." *Taylor*, 313 F. App'x at 836; *see also TriHealth*, 430 F.3d at 790 (noting that "disparate treatment of persons is reasonably justified if they are dissimilar in some material respect").

If the plaintiffs succeed in demonstrating that they were treated differently from similarly-situated individuals, they must further prove that the government lacked a rational basis for its action. *TriHealth*, 430 F.3d at 791. This test is a narrow one, and we "will not overturn government action unless the varying treatment of different . . . persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational." *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005) (internal quotation marks omitted) (alterations in original). In a "class of one" case, the plaintiffs may demonstrate that the government's action lacked a rational basis "either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." *TriHealth*, 430 F.3d at 788. Here, Schellenberg and Riggle rely upon the latter

theory, arguing that the defendants "imposed additional application requirements in a spiteful effort . . . toward [them] for suing the township" previously.

A.

Schellenberg and Riggle argue here, as before the district court, that we must consider "all property owners in Bingham Township who apply for a Special Land Use Permit" as similarly situated to them for the purpose of our equal protection analysis because all applicants must "be treated equally and under the same standards and guidelines." The plaintiffs maintain that the Commission imposed higher standards upon their application; demanded additional information not required of other applicants; and refused to process their application, as mandated by the Zoning Ordinance. In particular, they argue (1) that Foster requested the involvement of Parker, the Township attorney, in reviewing their SLUP application, although Foster's assistance was not required in reviewing other applications; (2) that the Commission demanded a land division application as part of their SLUP application while not requiring the same of other applicants; and (3) that Rollenhagen improperly required septic approval from the health department. The district court rejected these arguments, as do we.

As an initial matter, we reject Schellenberg and Riggle's argument that "all [SLUP] applicants" are similarly situated to them. Indeed, we have recognized that "bare allegations that other applicants, even all other applicants, were treated differently is insufficient" to establish an equal protection violation unless the plaintiff shows that "these other applicants were similarly situated to the plaintiff." *Taylor*, 313 F. App'x at 836 (internal quotation marks omitted) (editorial marks omitted). In *Braun*, for example, we affirmed a district court's grant of summary judgment

to the defendants on a similar equal protection claim asserted by plaintiffs who sought to re-zone their commercial farm property for residential use. 519 F.3d at 574–75. We stated that "the failure to make any concrete allegations with respect to similarly situated persons mandate[d] a grant of summary judgment in the defendant's favor." *Id.* at 575. Here, we likewise conclude that the plaintiffs cannot establish a cognizable "class of one" equal protection claim merely by relying upon the unsupported assertion that "all applicants" are similarly situated.

The plaintiffs next contend that Foster "singl[ed] [them] out" by requesting Parker's involvement in reviewing their SLUP application and that this request constituted disparate treatment. To support this argument, the plaintiffs state that Rollenhagen testified that no other application had been treated in this manner. This argument, however, misstates Rollenhagen's deposition testimony, in which she remarked that she could not recall whether Parker had assisted in the review of other applications. Moreover, the plaintiffs have not explained how Parker's involvement resulted in any unequal treatment of them during the application review process. For example, the plaintiffs have not alleged that Parker's involvement resulted in more exacting review of their application. Instead, they argue without elaboration that "no other application had ever been singled out for attorney involvement at the application stage." This unsupported argument concerning Parker's review of the plaintiffs' application is insufficient to permit an inference of unlawful discrimination.

Furthermore, even assuming that Parker's review of their application constituted disparate treatment, the plaintiffs have not established that the Township lacked a rational basis for requesting Parker's involvement in light of the plaintiffs' prior lawsuits against the Township. We have

explained that, in order to prevail upon a "class of one" equal protection claim, the plaintiffs must establish that similarly situated individuals were treated differently and also "must show that the adverse treatment they experienced was so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011) (internal quotation marks omitted). Under rational basis review, the defendants "ha[ve] no obligation to produce evidence to sustain the rationality of its actions; its choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data." *Club Italia*, 470 F.3d at 298 (internal quotation marks omitted). Here, the plaintiffs have not met "this daunting standard." *1064 Old River Rd., Inc. v. City of Cleveland*, 137 F. App'x 760, 765 (6th Cir. 2005). At the time of their application, the plaintiffs had previously filed at least three lawsuits against the Township based upon alleged violations of FOIA and of Michigan's Land Division Act and Open Meetings Act. Given this history of legal disputes, the Township's decision to include Parker in the review of the plaintiffs' SLUP application was eminently reasonable.

The plaintiffs next contend that Rollenhagen treated them disparately with respect to other applicants by stating in her March 24, 2006, letter that a land division application was required to supplement their SLUP application. In the letter, Rollenhagen advised:

> Because the application is incomplete under Article XI [of the Zoning Ordinance], an analysis of compliance with Article X Clustered Housing Development can not be done until the above concerns are addressed. In addition, it is unclear from your application as to how you plan to convey the proposed property in the project. If this is a Land Division, the Township will require a complete application for Land Division to be submitted with the requested supplemental information.

Schellenberg and Riggle allege that this demand violated Article XI § 11.11 of the Zoning Ordinance, which does not include the land division application in the list of "data required" for SLUP applications. However, contrary to the plaintiffs' argument, the record indicates that the plaintiffs, in fact, were not required to obtain land division approval before proceeding with their SLUP application. On September 15, 2006, Patmore, the Zoning Administrator, advised the plaintiffs that "the best way to proceed with the review of [their] proposed 'clustered] metes and bounds project is to first submit the application . . . for issuance of a Special Land Use Permit, then, if [it] is issued, proceed with the Land Division Approval." This statement concerning the land division application comports with the requirements of Article X § 10.6 of the Zoning Ordinance, which provides that, in addition to meeting the requirements of Article XI, clustered housing sites "shall also meet the requirements . . . pertaining to the method of conveyance. (i.e. Site Condominium, Subdivision, Land Division)[.]" And, the record further indicates that the Township required land division approval as a condition for granting other applicants' cluster housing permits.[4] Thus, the plaintiffs have not presented evidence permitting the inference that they were treated differently than similarly situated applicants with respect to the land division application.

The plaintiffs also generally allege that the Commission required them to "jump through hoops" by demanding data that was not required under Article XI § 11.11 of the Zoning Ordinance. Specifically, Schellenberg and Riggle argue that they were subject to "heightened requirements" by

---

[4]For example, the plaintiffs have included in the record the Township's decision conditionally approving the SLUP application filed by Michele and Alan Weverstad for the Lee Point's Island View project. The Township's conditional grant of the Weverstads' SLUP application states that they "[m]ust obtain Land Division Approval" in order to proceed.

the Commission, which has "never required anyone else to submit [site plans showing] soils, natural features, vegetation and topography, [the] proposed location of buildings and structures to be constructed," or sewering plans. We find this argument meritless. Article XI § 11.11 of the Zoning Ordinance prescribes data that "shall accompany" the SLUP application. This data includes: "[a] site plan drawn to scale . . . sufficient to show the lot/lots on which the proposed special use is to exist or be conducted, including soils, natural features, vegetation and topography; . . . the proposed location of buildings and structures to be constructed . . . and [the] location of on site sources of water, lagoons and other sewering plans." Accordingly, the terms of § 11.11 undermine the plaintiffs' contention that the Commission imposed more stringent requirements upon them. Rather, the Commission requested that the plaintiffs file a complete application, as required by the Zoning Ordinance.[5]

B.

We now turn our attention to the plaintiffs' allegation that they were treated less favorably than several specific cluster-housing applicants. In particular, Schellenberg testified in her deposition that Thomas Darga, owner of the Pathways project, and Wayne Kiley, owner of the Bayview Pines project, were treated more favorably than the plaintiffs during the application process.

---

[5]To the extent that the plaintiffs allege that the Township improperly delayed review of their SLUP application by requiring them to submit data in accordance with §11.11, we also reject this argument. The record indicates that Schellenberg and Riggle submitted three different versions of their proposed project throughout the spring and summer of 2006, involving both clustered and non-clustered site plans. Thus, although the plaintiffs allege that their project was delayed for 11 months, the record reflects that Schellenberg and Riggle did not decide upon a finalized site plan until September 2006.

-14-

Schellenberg stated that, based upon her review of the site plans submitted by Darga and Kiley, the Pathways and Bayside Pines projects were approved by the Commission without documentation of the natural features, vegetation, sewage disposal plans, and topography of the property. The plaintiffs also allege that they were treated less favorably than the Weverstads, owners of the Island View project. In essence, the plaintiffs contend that the Commission typically did not enforce the requirements of § 11.11 with respect to other cluster housing applicants but did so in their case out of animosity stemming from the plaintiffs' legal disputes with the Township.

The plaintiffs first argue that they were treated less favorably by the Commission than Darga. Schellenberg testified in her deposition that, based upon her "review[] [of] the original site plan that was submitted by Pathways," Darga was not required to submit data concerning "soils, natural features, vegetation and topography, [the] proposed location of building[s] and structures to be constructed . . . [or] sewering plans." The record, however, does not support Schellenberg's allegations of unequal treatment. To the contrary, a "Staff Report—Review of Pathways Clustered Site Condominium Project," filed on May 24, 2006, indicates that Darga was required to submit data concerning the natural features, vegetation, and sewering on his property in order to obtain conditional approval of the Pathways project. The report notes the following: (1) Darga "proposes to preserve wetlands as open space"; (2) Darga "is working with the Benzie-Leelanau Health Department for on-site sewage disposal" and "shows septic systems on remote sites"; and (3) Darga "needs to state clearly the significant ecological areas that will be preserved."

The Commission's minutes from its June 1, 2006, meeting also indicate that Darga, like the plaintiffs, was required to supplement his application with additional information: Darga "was

-15-

notified of the deficiencies in his application and Planner Rollenhagen will provide [Darga] with a list of items to be provided to the township prior to approval." The record therefore makes clear that the Commission required Darga to submit the data required by § 11.11, and it undermines the plaintiffs' argument that the Commission imposed more demanding requirements upon them. *See Umani v. Mich. Dep't of Corr.*, No. 10-1169, 2011 WL 2882254, at *7 (6th Cir. July 18, 2011) (noting that Umani's claim that he and another prisoner had been subject to adverse treatment undermined the argument that Umani had received unequal treatment). Schellenberg and Riggle have not presented evidence that Darga received more favorable treatment by the Commission. *See, e.g.*, *Renchenski v. Williams*, 622 F.3d 315, 338 (3d Cir. 2010) (concluding that appellant failed to establish a "class of one" equal protection claim "because he has adduced no evidence of unequal treatment"). And, Schellenberg's own unsupported opinion on this point is insufficient to create a genuine issue of material fact. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) (stating that "conclusory allegations and subjective beliefs . . . are wholly insufficient to establish a claim of discrimination as a matter of law").

Second, the plaintiffs submit that Kiley and the Weverstads received more favorable treatment by the Commission during the review of the Bayview Pines and Island View projects. They contend that the "Bay[view] Pines cluster project was under consideration . . . repeatedly amended, and repeatedly approved before and after the date of [Schellenberg and Riggle's] application." In her deposition, Schellenberg testified that Kiley "had multiple hearings at the planning commission" and that she "wouldn't be surprised if Bingham Township hasn't had Wayne Kiley's project in hearings more than ten times." The plaintiffs similarly allege that other applicants,

such as the Weverstads, were permitted to appear before the Commission "several times before their application was completed, without a completed site plan or drawing of the project." However, even accepting these assertions, Schellenberg's testimony does not suggest that either Kiley or the Weverstads received more *favorable* treatment by virtue of their multiple hearings before the Commission. Rather, the record indicates that multiple hearings occurred in some cases in order to cure problems in the applicant's site plan. For example, the Commission's April 7, 2007, minutes state that review of the Island View project was "table[d] until [the] next meeting so further research [could] be done" to address concerns raised by the Township. And, Schellenberg's allegation concerning the inadequacy of her hearing before the Commission is particularly disingenuous given that the plaintiffs did not attend their public hearing on December 7, 2006, and made no effort to postpone it until a later, more convenient, date. Thus, we find that the plaintiffs have not come forward with any evidence of unequal treatment on the basis of their hearing before the Commission.

The record also does not support Schellenberg's argument that the Weverstads were not required to submit a site plan for the Island View project and therefore obtained more favorable treatment. To the contrary, a staff report by the Commission indicates that the Island View project initially was scheduled for a public hearing on April 12, 2007; that the Weverstads submitted an application package for the project on November 9, 2006; and that the Weverstads filed a site plan on January 30, 2007. In its "general findings of fact," the staff report further notes that the Island View "site plan shows three residential parcels and one open space parcel," and it contains a detailed description of each proposed lot. Schellenberg's contention concerning the Island View site plan is without merit.

Third, the plaintiffs argue that the trial court erred in concluding that the Weverstads were not similarly situated to them. The district court reached this conclusion after considering the deposition testimony of Rollenhagen, who noted that the Zoning Ordinance obligated cluster housing applicants to comply with the requirements of the health department and that the health department, through Grant's letter and testimony, had expressed concern over the potential sewage problems on the plaintiffs' property. Rollenhagen further stated that, unlike the Island View project, "if something had happened to [Schellenberg's] septic system, she wouldn't be able to replace it. And that was a major concern of the township's, because . . . she would not be able to live in the house." Thus, the Weverstads were not required "to go through the same review [as plaintiffs because] [t]hey just did not have the same problem." The plaintiffs, however, contend that the Township's comparatively stringent review of their sewage problems constituted unlawful discrimination.

In *Rondigo*, we evaluated a similar claim of unlawful discrimination and stated that, even accepting that an allegedly similarly situated individual "was not in fact subjected to any of these various adverse treatments, an inference of discriminatory animus arises only if the . . . defendants' proffered reasons for the actions are negatived or shown to be irrational." 641 F.3d at 683. There, the plaintiffs alleged that the Township imposed heightened requirements on their compost operations application. *Id.* at 682–83. In rejecting the plaintiffs' claim we noted that these requirements "were triggered by the discoveries, during site inspections, that plaintiffs had stockpiled large amounts of leaves . . . creating potential for groundwater pollution." *Id.* at 683. And we noted that the plaintiffs' pleadings "substantiate[d] undisputed and facially legitimate reasons for the . . . defendants' complained-of actions in regulating plaintiffs' compost operation . . . reasons that appear

-18-

to be unique to that property." *Id.* We therefore held that "no inference of unlawful discrimination can legitimately arise where the only asserted comparable . . . is shown by plaintiffs' own pleadings to be *dissimilarly* situated in several relevant respects." *Id.* at 683–84.

Here, as in *Rondigo*, the plaintiffs have not established that the Weverstads were similarly situated in all relevant respects, nor have they demonstrated that the Commission's review of their septic system was irrational. Grant, the Township's Environmental Sanitarian, repeatedly expressed concern about sewage disposal plans for the Baywatch project through written correspondence and through testimony before the Commission. In his March 3, 2006, letter, Grant noted that the plaintiffs' site plan, which included a residential parcel containing less than one acre of land, "did not show any area that meets [the Township's] conventional sanitary code" and that land divisions of less than an acre were ineligible for alternative treatment systems or holding tanks. Grant reiterated this concern at the Commission's December 7, 2006, meeting, stating that because "proposed parcel A is less than one acre . . . another permit could not be issued if the existing [septic] system failed." Similarly, in its decision denying the plaintiffs' permit, the Commission noted that the Township's health department "could not approve a replacement [septic] system or the installation of holding tanks should the existing drywell fail" and that the Baywatch project "creates a potential problem for adequate and safe septic disposal for the existing single family dwelling (located on parcel A)."

Because the plaintiffs have not submitted evidence that the Island View project implicated comparable septic concerns, they have not created a permissible inference that the Weverstads were similarly situated, and they are not entitled to an inference of unlawful discrimination on this basis.

*See Rondigo*, 641 F.3d at 683–84; *Braun*, 519 F.3d at 575 (rejecting plaintiffs' equal protection claim where they "fail[ed] to allege any specific examples of *similarly situated* individuals"). Schellenberg and Riggle also have not submitted evidence from which it could be inferred that the Commission acted with discriminatory animus in reviewing their application; rather, after consulting with the health department, the Commission expressed legitimate concerns about sewage disposal on the plaintiffs' property based upon their proposed land division. Having reviewed the plaintiffs' various allegations of unequal treatment, we agree with the district court and conclude that the plaintiffs have not submitted evidence that could establish a cognizable "class of one" equal protection claim.

IV.

Schellenberg and Riggle next argue that the district court failed to construe the facts in the light most favorable to them in its review of the defendants' motion for summary judgment. It is well-settled that the court, when reviewing a motion for summary judgment under Fed. R. Civ. P. 56, views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Slusher*, 540 F.3d at 449.

The plaintiffs argue that the district court was required to "accept as true that Plaintiffs are similarly situated" to all other applicants under the Zoning Ordinance. They further contend that the district court "failed to accept as true [their] assertion that the Planning Commission treated *these applicants* differently during the application process, and imposed additional standards . . . as to what is required on the application." We disagree. The plaintiffs' allegations "are exposed as little more than 'legal conclusions couched as factual allegations'" and thus need not be construed in the plaintiffs' favor under Rule 56 scrutiny. *Cf. Rondigo*, 641 F.3d at 684 (stating that legal conclusions

presented as factual assertions "need not be accepted as true under Rule 12(b)(6) scrutiny"). The district court committed no error in evaluating whether the factual evidence created a genuine issue of material fact.

V.

In their final claim, the plaintiffs contend that the district court failed to consider their "amended pleadings" when it denied their Rule 59(e) motion to alter or amend judgment. The "amended pleadings" comprise an affidavit filed by Schellenberg on August 6, 2009, which outlined thirty-three alleged instances of disparate treatment. The district court concluded that these new factual assertions were "too little, too late," given that it was "hard to imagine how an affidavit from plaintiff herself was previously unavailable to counsel."

Although we generally review the denial of a motion to alter or amend judgment under Rule 59(e) for an abuse of discretion, "when the Rule 59(e) motion seeks review of a grant of summary judgment, . . . we apply a *de novo* standard of review." *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 375 (6th Cir. 2009) (quoting *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998)) (alteration in original). Thus, in this case, *de novo* review is proper.

A court may grant a timely filed motion to alter or amend judgment only where there is "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *ACLU v. McCreary Cnty.*, 607 F.3d 439, 450 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). But, we have repeatedly held that a Rule 59(e) motion "does not permit parties to . . . re-argue a case" and "cannot be used to present new arguments that could have been raised prior to judgment." *Howard v. United*

*States*, 533 F.3d 472, 475 (6th Cir. 2008) (internal quotation marks omitted); *see also Moore v. Coffee Cnty.*, 402 F. App'x 107, 109 (6th Cir. 2010) ("Indeed, this court has long held that '[a] Rule 59(e) motion . . . is not the proper vehicle to raise arguments that should have been made before judgment.'") (quoting *Russell v. GTE Gov't Sys. Corp.*, 141 F. App'x 429, 434 (6th Cir. 2005)).

Although conceding that Schellenberg's supplemental affidavit cannot be considered "newly discovered evidence" for the purpose of a Rule 59(e) motion, the plaintiffs nevertheless contend that they were entitled to a grant of their motion in order to "prevent manifest injustice." We disagree. The plaintiffs have not cited any case law supporting their argument, and we find that Schellenberg's affidavit constituted an improper attempt to re-argue the merits of her case. *See Howard*, 533 F.3d at 475. The district court did not err in denying the plaintiffs' Rule 59(e) motion.

## VI.

For the foregoing reasons, we affirm the district court.