NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0268n.06

Case No. 23-1479

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| DANIEL MCCAUSLAND, et al., | ) | **FILED**<br>Jun 18, 2024<br>KELLY L. STEPHENS, Clerk |
| Plaintiffs - Appellants, | ) |  |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| CHARTER TOWNSHIP OF CANTON, et al., | ) | DISTRICT OF MICHIGAN |
| Defendants - Appellees. | ) |  |
|  | ) | O P I N I O N |

Before: MOORE, NALBANDIAN, and BLOOMEKATZ, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Public officials in Canton, Michigan, allegedly prevented Daniel and Robert McCausland from developing a plot of commercial land that they owned in the Township. So they sued the Charter Township of Canton, Toebe Construction, and five individuals on twelve counts, alleging various constitutional and common-law violations and seeking a writ of mandamus. The district court dismissed five counts and granted summary judgment to the defendants on the other seven. We AFFIRM.

## I.

Daniel and Robert McCausland own property, on which they've been operating an auto service business since the 1970s, by Lotz Road in the Charter Township of Canton, Michigan. In 1992, the property was rezoned to mid-rise development (MRD), requiring any development in the area to be at least six stories high. So to meet the area requirements for this kind of

development, the McCauslands purchased smaller parcels around their property, eventually accumulating a total of eighteen contiguous parcels. And a few years after the property was rezoned to MRD, it also became subject to the Township's Corporate Park Overlay District zoning ordinances, meaning that all new development there would require approval as a "special land use." This approval process involved an application by the property owner, preliminary site plan preparation, administrative review, public hearing, consideration from the planning commission, and then a final decision from the township board.

Under this regime, the McCauslands applied for and received vehicle-dealer licenses from the Township in 2006. Since then, they have submitted one more application: a 2018 application "for a special land use for a physical rehabilitation services clinic." R. 15-11, Goulet Aff., p. 3, PageID 221. It was unanimously approved by both the planning commission and the township board. Although the McCauslands never submitted any applications that the Township denied, they claim preliminary conversations with the Township strongly discouraged them from filing a special-land-use application.

In 2015, Wayne County received funds from the State to improve Lotz Road and, following a public bidding process, awarded the project to Toebe Construction, a private LLC. While this project was underway, the McCauslands contracted with Toebe to have water-main and sewer lines extended to their property. Wayne County approved, but only if it happened while the road was under construction. Accordingly, Toebe's proposal to the McCauslands explicitly stated that because of the paving schedule for the road improvements, everything would have to be completed by June 24, 2016, and if the utility extensions could not be completed by then, the proposal would become null and void. And it was the McCauslands' responsibility to secure the proper permits from both Wayne County and the Township.

The McCauslands hired Fairway, a private engineering firm, to prepare construction drawings for the review process. But in the interim, the Township discovered a critical error and informed the McCauslands that their drawings misstated the size of the water main they were connecting to—it was 54 inches, not 24. The drawings Fairway had relied on (generated by another firm) were mistaken. Although the McCauslands had to revise their drawings and resubmit them for review, they were "able to successfully overcome" any "permit delays" this error might have caused. R. 68-2, D. McCausland Dep., pp. 95–96, PageID 1736–37. Wayne County issued an addendum to its permit recognizing the revisions on June 22.

But this was too late for Toebe, which informed the McCauslands the day before that it would not proceed with the installation. There were only three days left until the proposal's June 24 deadline for the project's *completion*, and the McCauslands still lacked the required permits to move forward.

Although the McCauslands concede that it remains possible to develop their property within the existing zoning, they maintain that their property has been significantly devalued and that they have been unable to sell.

So in September 2018, the McCauslands sued the Township, several Township officials,[1] and Toebe Construction under a general theory that the Township conspired with Toebe to prevent the McCauslands from connecting their properties to utilities in retaliation for their earlier refusal to grant the Township an easement. They alleged twelve counts in their complaint: procedural due process (Count I), substantive due process (Count II), Fifth Amendment takings (Count III), equal protection (Count IV), conspiracy under 42 U.S.C. § 1986 (Count V), due process under the

---

[1] For the rest of this opinion, we refer to the Township and the named officials in this suit collectively as "the Township."

Michigan constitution (Count VI), inverse condemnation (Count VII), a writ of mandamus (Count VIII), defamation (Count IX), tortious interference (Count X), a preliminary and permanent injunction (Count XI), and costs of litigation (Count XII).[2]

The Township filed a pre-answer motion to dismiss. The district court granted it in part, dismissing Count III as unripe and dismissing Counts XI and XII because neither were independent causes of action. The Township moved to reconsider, and the district court dismissed Count V for insufficient pleadings and Count VII as unripe.

Accordingly, the remaining seven counts went to discovery starting on April 10, 2020, with an initial deadline of October 30, 2020. And after three extensions, discovery closed on July 26, 2021. Days before the July 26, 2021, discovery deadline, Toebe, with the plaintiffs' concurrence, asked for another extension of the discovery deadline. Thereafter, on September 10, 2021, the McCauslands moved to compel discovery, claiming that, despite their own efforts, the Township had not yet provided everything the McCauslands requested. In the meantime, Toebe and the Township each moved for summary judgment by the August 26, 2021, deadline.

By the time the court had a hearing on the summary-judgment motions, the motion to extend discovery, and the motion to compel, the McCauslands were able to depose four Township employees. The McCauslands also filed oppositions to summary judgment.

On October 24, 2022, the district court granted summary judgment to Toebe and the Township on all counts and denied the motion to compel discovery as moot. The court found that Toebe, as a private entity, is not liable for the constitutional violations in Counts I and IV and that,

---

[2] The complaint is generally confusing, conclusory, and imprecise. For many counts in the complaint, plaintiffs make general allegations against all "Defendants" rather than pleading who exactly is responsible for what. This method of pleading is generally prohibited. *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ("Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that *each* Defendant is liable.").

because Toebe is a party to the contract at issue in Count X, it cannot be subject to a cause of action for tortious interference.

As to the Township, the district court found that Counts I, II, and VI failed because the McCauslands showed no protected property right. Count IV fell for lack of a similarly situated comparator. Count VIII failed because the district court found that the McCauslands "have not offered any evidence or argument regarding any of the elements" necessary to establish their claim. R. 80, SJ Order, p. 24, PageID 2269. And finally, Counts IX and X failed because the McCauslands "did not specifically plead the defamatory statements on which their claim is based" and "fail[ed] to cite evidence of acts of tortious interference by any of the Canton Defendants." *Id.* at 27, PageID 2272.

The McCauslands moved to amend the judgment per Federal Rule of Civil Procedure 59(e), mainly arguing that (1) Toebe should be liable for constitutional violations as an agent of the Township, (2) they had a protected property interest because of their significant investments of time and money, and (3) they did not have a full opportunity to conduct discovery. The district court denied their motion.

So the McCauslands timely appealed, arguing that the district court erred by dismissing Counts III and VII, by granting summary judgment to Toebe and the Township in Counts I, II, IV, and VI, and by granting summary judgment while the McCauslands still sought outstanding discovery.

**II.**

For counts dismissed under Federal Rule of Civil Procedure 12(b)(1), we review the existence of subject-matter jurisdiction de novo. *Ammex, Inc. v. Cox*, 351 F.3d 697, 702 (6th Cir. 2003). And when there is a "*factual* attack" to the existence of subject-matter jurisdiction, we do

5

not presume that the plaintiffs' factual allegations are true. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Instead, "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

We review grants of summary judgment de novo, viewing the evidence "in the light most favorable to the nonmoving party and drawing 'all justifiable inferences' in his favor." *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). And we affirm when the movant nonetheless "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

And although we normally review a district court's denial of a motion to amend judgment under Rule 59(e) for abuse of discretion, *see Intera Corp. v. Henderson*, 428 F.3d 605, 619 (6th Cir. 2005), when the motion seeks reconsideration of a summary-judgment grant, we review de novo, *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454–55 (6th Cir. 2003) (citing *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir. 1999); *Columbia Gas Transmission, Corp. v. Ltd. Corp.*, 951 F.2d 110, 112 (6th Cir. 1991)).

Finally, we review a district court's denial of discovery motions (and corresponding challenges that the district court granted summary judgment prematurely) for abuse of discretion. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 419–20 (6th Cir. 2008) (citing *Vance ex rel. Hammons v. United States*, 90 F.3d 1145, 1149 (6th Cir. 1996)). And a "district court abuses its discretion when it relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law." *United States v. Dado*, 759 F.3d 550, 559 (6th Cir. 2014) (citation and internal quotation marks omitted).

**A.**

The McCauslands argue that their deposition testimony below "create[d] a question of fact" as to "whether Toebe Construction could be subject to liability for alleged constitutional violations as a private entity." Appellant Br. at 40. Although their brief on appeal never specifies what kinds of constitutional violations they allege against Toebe, the proceedings below point to Counts I and IV (due process and equal protection under the Fourteenth Amendment). But "[i]t is undisputed that . . . Fourteenth Amendment protections, codified in 42 U.S.C. § 1983, are triggered only in the presence of state action," *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978)), and Toebe is a private LLC.

We have three tests to determine whether a private party counts as a state actor: "(1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test." *Id.* Yet the McCauslands provide no evidence to support their argument, resting instead on the following conclusory assertions:

> Here, plaintiffs testified that the Township exercised coercive power and/or significantly encouraged Toebe Construction not to perform under its contract. Plaintiffs' testimony creates a question of fact as to whether Toebe Construction qualifies as a state actor under the state compulsion test. The district court therefore erred in granting summary judgment as to plaintiffs' constitutional claims against Toebe Construction.

Appellant Br. at 40. The closest they get is a claim that they created a question of fact as to "whether Toebe Construction was acting as an agent of the Township." *Id.* But they make no attempt to explain how this alleged agency relationship meets the requirements of the state-compulsion test.

Even if the McCauslands had properly identified the legal basis for their state-action argument, any such theory lacks evidentiary support. Specifically, the McCauslands fail to explain how Toebe was an agent of the Township despite the fact that Toebe was a contractor for Wayne

7

County and not for the Township. The McCauslands were required to contract with Toebe because Wayne County had awarded Toebe the underlying Lotz Road contract. And the McCauslands have not identified any factual basis to show that the Township coerced Toebe's decision to terminate the contract with the McCauslands. *See* R. 68-2, pp. 112–13, PageID 1753–54 (failing to identify anyone at the Township involved in Toebe's decision to terminate the contract).

Thus, we can't say that the district court erred in granting summary judgment to Toebe. So we AFFIRM the district court's grant of summary judgment to Toebe.

**B.**

On appeal, the McCauslands preserved six counts against the Township: three due-process claims, one equal-protection claim, and two takings claims.

**1.**

The McCauslands' first claim is that the Township violated their constitutional rights to procedural and substantive due process.[3] They make no claim that they have been deprived of any life or liberty interest. So to establish a procedural-due-process claim, the McCauslands must show that they (1) have a constitutionally protected property interest (2) they were deprived of by the state (3) without adequate procedural rights. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). And to establish a substantive-due-process claim, they must show that they have (1) a constitutionally protected property interest (2) that has been deprived through arbitrary and

---

[3] The McCauslands make both federal and state due-process claims. But typically, Michigan's due-process "provision is coextensive with its federal counterpart." *Cummins v. Robinson Township*, 770 N.W.2d 421, 438 (Mich. Ct. App. 2009) (citing *People v. Sierb*, 581 N.W.2d 219, 220 (Mich. 1998) (explaining that the federal and state due-process clauses are "coextensive . . . [a]bsent definitive differences in the text . . . , common-law history that dictates different treatment, or other matters of particular state or local interest"). So, seeing no reason to depart from the general rule, we consider these claims together.

capricious action. *Braun v. Ann Arbor Charter Township*, 519 F.3d 564, 573 (6th Cir. 2008). The McCauslands cannot establish either claim.

The McCauslands principally claim that they have a protected property right in special-land-use permits for the development of their property. Although property interests are protected by the Constitution, they themselves are not created by the Constitution but "by 'an independent source such as state law.'" *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 435 (6th Cir. 2005) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). So the existence of a constitutionally protected property interest "is traditionally a question of state law." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)).

In Michigan, property rights vest only after a building permit has been issued, and the landowner has commenced "substantial construction." *Seguin v. City of Sterling Heights*, 968 F.2d 584, 591 (6th Cir. 1992) (citing *City of Lansing v. Dawley*, 225 N.W. 500 (Mich. 1929); *Schubiner v. West Bloomfield Township*, 351 N.W.2d 214, 219 (Mich. Ct. App. 1984)). And the McCauslands admitted that they never commenced substantial construction on any project at issue in this suit. Nor did they "obtain special use permits to develop their property." Reply Br. at 5. In fact, they never even *applied* for special-land-use permits during the relevant timeframe, despite the fact that the Township had granted them several special-land-use approvals in the past.

The McCauslands also overstate the constitutional import of informal "pre-application" meetings where Township personnel allegedly expressed hostility to their unsubmitted land-use requests. Appellant Br. at 45. As the McCauslands admit, the Township never relinquished its discretion to its personnel to deny them special-land-use permits, meaning a property interest cannot arise from the outcome of their unsubmitted applications. *See Silver v. Franklin Twp. Bd.*

9

*of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). So they have no constitutionally protected right in special-land-use permits to develop their property, even if they "invested a significant amount of time and money to assemble" parcels of land. *Compare* Appellant Br. at 42, *with Bevan v. Brandon Township*, 475 N.W.2d 37, 46 (Mich. 1991) ("Where building permits have been applied for, but have not been issued, vested rights are not acquired, even though significant sums may have been expended by the applicant.").

The McCauslands also briefly suggest that they have a protected property right in a prior nonconforming use for outdoor storage. But even though a stipulation in state court permitted them to use their property for outdoor storage, this claimed right is not unconditional. Their outdoor storage was required to "be maintained in a neat [and] orderly condition," restricted to a specific area, and vehicle storage was limited to four storage trailers. On appeal, the McCauslands point to no evidence that the Township deprived them of this right arbitrarily or otherwise. *Hahn*, 190 F.3d at 716; *Braun*, 519 F.3d at 573. Although they point to deposition testimony to claim they were "ticketed repeatedly by the Township for having outside storage," they offer no evidence that they had been ticketed *while in compliance* with the stipulated conditions of this right to outdoor storage. Appellant Br. at 49. So without a showing that the Township deprived them of a protected property interest, the McCauslands cannot establish due-process claims. *Hahn*, 190 F.3d at 716; *Braun*, 519 F.3d at 573.[4]

The district court properly granted summary judgment to the Township on all three due-process counts.

---

[4] Although the district court granted summary judgment on the outdoor-storage issue for lack of jurisdiction, R. 80, SJ Order, p. 19, PageID 2264, "we may affirm on any grounds supported by the record even if different from the reasons of the district court," *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002).

**2.**

Second, the McCauslands claim that "the district court erred in granting summary judgment on plaintiffs' equal-protection claim based upon the deposition testimony of the plaintiffs." Appellant Br. at 50. To establish their equal-protection claim, the McCauslands must demonstrate that the government treated them "disparately as compared to similarly situated persons" and that this disparate treatment "burdens a fundamental right, targets a suspect class, or has no rational basis." *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1152 (6th Cir. 2022) (citation omitted). The McCauslands do not claim that the Township has burdened a fundamental right or targeted a suspect class, so we review for rational basis. But their claim fails at the first step because they have identified no similarly situated comparators.

"When evaluating whether parties are similarly situated, courts should not demand exact correlation, but should instead seek relevant similarity." *EJS Props.*, 698 F.3d at 864–65 (citation and internal quotation marks omitted). The McCauslands point in particular to Sam's Club, also in the Corporate Park Overlay District, which "the Township permitted . . . to provide automobile services and sell vehicles," even though the McCauslands were not afforded the same luxury. Appellant Br. at 52.

But their own admissions tacitly concede that Sam's Club, unlike the McCauslands, actually *applied* for the permit it received. Thus, as the district court correctly found, they "failed to identify anyone who is similarly situated *vis a vis* [sic] one critical component – Plaintiffs have not identified any other property owner who failed to apply for the approvals they desired" and nonetheless received them. R. 80, p. 23, PageID 2268. The McCauslands failed to demonstrate that the government treated them disparately as compared to anyone similarly situated, *Reform*

11

*Am.*, 37 F.4th at 1152, so the district court properly granted summary judgment to the Township on equal protection.[5]

**3.**

Finally, the McCauslands argue that the district court should not have dismissed their federal regulatory-takings claim and their state-law inverse-condemnation claim. But neither claim was ripe, so the district court properly dismissed them for lack of subject-matter jurisdiction. *See Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002).

A regulatory-takings claim is not ripe until after "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Id.* (quoting *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Township of Scott*, 588 U.S. 180 (2019)).[6] And under Michigan law, an inverse-condemnation claim is "premature[]" until the plaintiff has "obtained a final decision . . . regarding its request." *Electro-Tech, Inc. v. H.F. Campbell Co.*, 445 N.W.2d 61, 77 (Mich. 1989).

The McCauslands, however, identify no final decision from the Township that they wish to challenge. Indeed, every final decision they've received has been favorable. Instead, the McCauslands argue that the district court erred in dismissing their claims because they "alleged a

---

[5] The McCauslands also ask us to address outdoor storage here, but they provide no evidence for their conclusory allegations that other businesses in the area were using their properties for outdoor storage beyond the scope of applicable permits. Without evidence that these other businesses *should* have been cited, we cannot find them similarly situated to the McCauslands, and the McCauslands cannot use them to establish their equal-protection claim.

[6] Prior to *Knick*, under *Williamson*, a regulatory-takings claim was not ripe until (1) the government reached a final decision, 473 U.S. 172, 186 (1985), and (2) the plaintiff sought compensation through state procedures, *id.* at 194–95. *Knick* overruled the state-litigation requirement, 588 U.S. 180, 206 (2019), making a federal forum available to plaintiffs earlier. But it did not disturb *Williamson*'s finality requirement. *Id.* at 188.

claim under the Fifth Amendment Takings Clause in their complaint" and "sufficient [sic] pled a claim for inverse condemnation pursuant to Michigan law." Appellant Br. at 57, 59. While alleged claims might survive dismissal for failure to state a claim under Rule 12(b)(6), *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), they do not confer subject-matter jurisdiction to survive dismissal under Rule 12(b)(1), *Wayside Church v. Van Buren County*, 847 F.3d 812, 817 (6th Cir. 2017) ("[W]here subject matter jurisdiction is challenged under Rule 12(b)(1), as it was here, *the plaintiff has the burden of proving jurisdiction in order to survive the motion*." (emphasis added) (citation omitted)).

So the district court properly dismissed both the takings claim and the inverse-condemnation claim for lack of subject-matter jurisdiction.

### C.

Aside from their discrete claims against Toebe and the Township, the McCauslands also argue that the district court abused its discretion by prematurely granting summary judgment while they "sought outstanding discovery." Appellant Br. at 30–31.[7] When reviewing these kinds of claims, we consider five main factors: (1) when the appellants learned of the issue subject to the desired discovery, (2) if the added discovery would have changed the ruling below, (3) the length

---

[7] A nonmovant generally opposes motions for summary judgment as premature for lack of sufficient discovery through Federal Rule of Civil Procedure 56(d), which requires a showing "by affidavit or declaration that, for specified reasons, [the nonmovant] cannot present facts essential to justify its opposition." After Toebe and the Township moved for summary judgment here, however, the McCauslands filed only a motion to compel outstanding discovery, including neither the requisite affidavit nor declaration. They discussed this motion at the summary judgment hearing, arguing "that summary judgment [wa]s premature at this point." R. 93, SJ Hr'g Tr., pp. 5–6, PageID 2403–04. With neither an affidavit nor a declaration filed with the district court, it is plausible that the McCauslands have failed to preserve this issue for appellate review. *See United States v. One Harrington & Richardson Rifle*, 378 F.3d 533, 535 (6th Cir. 2004) (order). But defendants argue the issue "on the merits." And plaintiffs don't prevail in any event.

of the discovery period, (4) if the appellants were dilatory in their discovery efforts, and (5) if the appellees were responsive to discovery requests. *CenTra*, 538 F.3d at 420.

Here, the discovery period was extended three times and lasted over a year. Although the McCauslands complain that the Township "had been dilatory in their efforts to complete discovery," Appellant Br. at 33, they didn't move to compel discovery until September 10, 2021—six weeks after the third and final discovery deadline. The McCauslands also had the opportunity to depose four Township employees before the summary judgment hearing but after they had filed their oppositions to the pending motions for summary judgment. And, at the summary judgment hearing, the McCauslands admitted that they were unable to schedule depositions of Toebe personnel primarily due to counsel's schedule. R. 93, SJ Hr'g Tr., p. 6, PageID 2404. That said, the McCauslands identify several Township and Toebe personnel that they did not have the chance to depose that they believe would have provided relevant factual information.

The McCauslands principally contend that they needed more discovery for their "claim that the Township defendants told the Toebe Construction employees to pull off the [water-main-extension] project," which they claim would bolster their argument that Toebe is constitutionally liable as a state actor. Appellant Br. at 34, 39.[8] But this was no new issue. It was the *basis* for their constitutional claims against Toebe in the complaint they filed on September 12, 2018—at the very beginning of this suit.

---

[8] The McCauslands broadly argue that they needed additional discovery for all of their claims; however, they fail to identify the missing information that was relevant to most of those claims. The one exception is the McCauslands' assertion that they needed to depose Charles Larocque because he was "the reason why the plaintiffs' water main extension project did not go forward." Appellant Br. at 36. This information, however, would not have altered the district court's conclusions—which we affirm on appeal—that the McCauslands' claims failed due to lack of a property interest in a special-use permit, lack of a similarly situated property, and lack of a final determination by the Township. *See supra* Section II.B.

Finally, but most importantly, additional discovery would not have changed the ruling below. Even if discovery revealed that the Township told Toebe not to complete the water-main project, the McCauslands have not identified any discovery that would alter the deficiencies in their claims: the lack of a property interest in the special-use permit, lack of a similarly situated property, and lack of a final determination by the Township. *See supra* Section II.B.

On this record, we cannot say that the district court abused its discretion by declining to extend discovery for a fourth time before granting summary judgment to Toebe and the Township.[9]

**III.**

For the reasons set forth above, we AFFIRM.

---

[9] The McCauslands briefly claim that extra discovery would have "changed the court's ruling below as to" their "request for a writ of mandamus (Count VIII)[, their] state claims for defamation (Count IX) and tortious interference with contract and/or business relations (Count X)," and supported their *Monell* claims against the Township. Appellant Br. at 37. But they do not accompany these claims with developed argumentation, so we find them forfeited. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).